LIME ROCK PARK, LLC *v.* PLANNING AND
ZONING COMMISSION OF THE
TOWN OF SALISBURY
(SC 20237)
(SC 20238)
(SC 20239)

Robinson, C. J., and Palmer, McDonald, Mullins,
Kahn, Ecker and Vertefeuille, Js.

*Syllabus*

Pursuant to the statute (§ 14-164a (a)) governing motor vehicle racing, such
racing "may be conducted at any reasonable hour of any week day or
after twelve o'clock noon on any Sunday," and "[t]he legislative body
of the . . . town in which the race or exhibition will be held may issue
a permit allowing a start time prior to twelve o'clock noon on any
Sunday, provided no such race or exhibition shall take place contrary
to the provisions of any . . . town ordinances."

The plaintiff, which owns property in the town of Salisbury, brought an
administrative appeal in the trial court, challenging the validity of certain
amendments to the town's zoning regulations concerning the racing of
motor vehicles that the defendant planning and zoning commission had
adopted in 2015. Motor vehicle racing had taken place on a racetrack
on the property since 1957, when the town had no zoning regulations.
In 1958, a group of town residents and entities brought a nuisance action
against the owners of the property at that time, alleging that the noise
and traffic associated with the racing activities interfered with the enjoy-
ment of their own properties. The trial court rendered judgment in 1959
for the plaintiffs and granted a permanent injunction prohibiting racing
activities on the property on Sundays, limiting mufflered racing activities
to certain times on weekdays, and prohibiting unmufflered racing except
during certain hours on Tuesdays, ten Saturdays a year, and certain
holidays. Shortly thereafter, the town adopted zoning regulations for

Lime Rock Park, LLC *v.* Planning & Zoning Commission

the first time, which allowed racing activities only during such hours as permitted by statute. In 1966 and 1968, the parties to the nuisance action entered into court approved stipulations that modified the court's original judgment with respect to, inter alia, certain aspects of unmuffered racing activity but maintained the ban on racing on Sundays. Sometime thereafter, the commission revised the zoning regulations to provide that racing activities on racetracks were specifically restricted to the hours permitted by the 1959 court order. The parties to the nuisance action entered into another stipulation in 1988, and the judgment was again modified accordingly. In 2013, the commission again revised the zoning regulations to provide that racing activities on racetracks were restricted to the hours permitted by the 1959 court order and the subsequent, related court orders. In 2015, the commission again amended the regulations and, in doing so, stated that those amendments were intended to maintain the status quo by codifying the restrictions that already were in place by virtue of the prior revisions of the regulations that incorporated by reference the previous court orders. The plaintiff challenged the commission's adoption of the 2015 amendments on numerous grounds, including the provision of the amendments prohibiting all racing activities on Sundays, which the plaintiff claimed was preempted by § 14-164a (a). The trial court permitted L Co., a group of entities and individuals who own property near the racetrack, to intervene in the appeal. L Co. contended that the plaintiff had waived its right to challenge the provision barring racing on Sunday because the plaintiff's predecessor in interest previously had stipulated to that limitation on the use of the property, and the 2015 amendments were intended to codify those stipulations. Following a trial, the court rejected L Co.'s waiver argument, sustained the portion of the plaintiff's appeal claiming that the regulation prohibiting racing on Sunday was preempted by § 14-164a (a), and denied the plaintiff's appeal in all other respects. Thereafter, the plaintiff, the commission, and L Co. filed separate appeals. *Held*:

1. The trial court correctly determined that the plaintiff did not waive its right to challenge the provision of the 2015 amendments prohibiting racing activities on the property on Sundays:

a. Although a stipulated judgment has attributes of a private contract, which merely memorializes the bargained for position of the parties and generally may not be modified without the consent of the parties, a stipulated judgment also is a final judicial order, the prospective provisions of a court approved stipulated judgment are injunctive in nature, and the court, therefore, retains ongoing jurisdiction over the stipulated judgment during the duration of its existence and may modify it upon a showing of changed circumstances; accordingly, there was no merit to L Co.'s claims that the plaintiff's predecessor in interest, by entering into the stipulated judgments in 1966 and 1968 prohibiting racing on Sundays, had permanently waived the right of its successors

608 NOVEMBER, 2020 335 Conn. 606

Lime Rock Park, LLC *v.* Planning & Zoning Commission

to seek a modification to the stipulations, and that, by waiving its right to modify the stipulations, the plaintiff's predecessor in interest also had waived its successor's right to challenge zoning regulations that codified the terms of the stipulations.

b. L Co.'s claim that, even if the stipulated judgments were injunctive in nature, the plaintiff and its predecessor in interest waived the right to challenge any modifications to the zoning regulations codifying the terms of the stipulations because they continuously abided by those terms for almost fifty years was unavailing, there having been no authority for the proposition that a party waives its right to seek a modification of an injunctive order, or to challenge the codification of such an order, merely by abiding by its terms.

c. This court declined to review L Co.'s claim that, even if the stipulated judgments were injunctive in nature and, therefore, subject to judicial modification, the plaintiff waived its right to challenge the prohibition on Sunday racing because the plaintiff and its predecessor in interest did not bring an administrative appeal to challenge the commission's prior amendments to the regulations incorporating by reference the court's orders prohibiting Sunday racing: L Co. provided no authority or analysis for the proposition that a party's failure to challenge a zoning amendment bars the party from challenging a subsequent amendment that was intended to recodify the original amendment in different language, and, therefore, the issue was inadequately briefed; moreover, even if this court assumed that a party cannot challenge an amendment to zoning regulations that merely recodifies a preexisting regulation using different language, in light of comments made by the commission's counsel and L. Co. itself during deliberations on the adoption of the 2015 amendments, it was not clear that the purpose of the 2015 amendments was merely to recodify the previous amendments, and L Co. provided no analysis with respect to that issue.

2. The trial court incorrectly concluded that § 14-164a (a) preempted the provision of the 2015 amendments prohibiting racing activities on Sundays: this court, having determined that the language of § 14-164a (a) was not clear and unambiguous, examined extratextual sources and the genealogy of the statute and concluded that § 14-164a (a) was prohibitory for preemption purposes in that it was intended only to bar municipalities from allowing racing activities that were statutorily prohibited, that is, racing during unreasonable hours on weekdays and before 12 p.m. on Sundays without a permit, and that it was not intended to confer the absolute right to engage in motor vehicle racing activities that were statutorily permitted; accordingly, § 14-164a (a) did not preempt the more restrictive provision of the 2015 amendments prohibiting all racing activities on Sundays; moreover, that interpretation of § 14-164a (a) as prohibitory did not render the statute meaningless because it still barred municipalities from allowing racing activities during unreasonable hours on weekdays and before 12 p.m. on Sundays without a permit, and it

335 Conn. 606     NOVEMBER, 2020          609

Lime Rock Park, LLC *v.* Planning & Zoning Commission

was of no consequence that § 14-164a (a) allows towns to adopt ordinances that are more restrictive than the statute, whereas, in the present case, the restrictions on racing activities on Sundays were imposed by zoning regulation, because the words "ordinance" and "regulation" frequently are used interchangeably, and the plaintiff did not explain why the legislature would have intended to limit the application of § 14-164a (a) solely to enactments by a town's legislative body via ordinance and to exclude enactments by a town's zoning commission via zoning regulation.

3. The trial court incorrectly concluded that the word "weekday," as used in the 2015 amendments, did not include Saturday and, accordingly, that mufflered racing is prohibited on Saturdays under the 2015 amendments; notwithstanding L Co.'s claim that the modern usage of the word "weekday," which was not specifically defined by the zoning regulations, excludes both Saturday and Sunday, this court was persuaded, and both the plaintiff and the commission agreed, that "weekday," as used in the 2015 amendments, was intended to include Saturday, as numerous dictionaries define "weekday" to include Saturday, this court's older case law used the word "weekday" to refer to any day of the week other than Sunday, and the language used in the 1959 memorandum of decision in the nuisance action, as well as in the language of the 1988 stipulation and a certain provision of the 2015 amendments, all strongly suggested that the word "weekday" was meant to include Saturday.

4. The trial court correctly concluded that the provision of the 2015 amendments restricting unmufflered racing activities did not constitute a noise control ordinance for purposes of the Noise Pollution Control Act (§ 22a-73) and, therefore, did not require the approval of the Commissioner of Energy and Environmental Protection in order for it to be effective; the 2015 amendments contemplated two distinct uses of the property in question, namely, mufflered racing and unmufflered racing, those uses had two different noise levels, the regulations provided different operating days and times for those different activities, and a zoning regulation that differentiates between distinct land uses that produce different noise levels for purposes of determining whether a specific use is appropriate for a property does not by itself specify noise levels and, therefore, does not constitute a municipal noise control ordinance for purposes of § 22a-73.

5. The trial court incorrectly determined that the commission acted within its authority when it adopted, as part of the 2015 amendments, regulations requiring that the plaintiff obtain a special permit and site plan as a condition to filing a petition seeking an amendment to the 2015 amendments, and, because those regulations arbitrarily restricted the persons who could seek an amendment to the zoning regulations, they were invalid: the commission's claim that the plaintiff lacked standing to challenge the special permit requirement because it did not bar the plaintiff from filing a petition seeking an amendment to the regulations

Lime Rock Park, LLC *v.* Planning & Zoning Commission

was unavailing, as the plaintiff was adversely affected by such a requirement; furthermore, both the commission and L Co. conceded that, under the special permit requirement, persons other than the plaintiff who were affected by the racing activities on the property and the 2015 amendments regulating those activities, such as neighboring landowners, would not be able to seek an amendment to the 2015 amendments, and such a restriction on the classes of affected persons who could seek an amendment to the zoning regulations was therefore arbitrary.

Argued November 13, 2019—officially released May 22, 2020*

*Procedural History*

Appeal challenging the validity of certain amendments to the zoning regulations of the town of Salisbury pertaining to the operation of racetracks and uses accessory to racetracks, brought to the Superior Court in the judicial district of Litchfield, where Lime Rock Citizens Council, LLC, was permitted to intervene as a defendant; thereafter, the case was tried to the court, *J. Moore, J.*; judgment sustaining in part the appeal; subsequently, the court granted the parties' motions to reargue; thereafter, the court opened and amended its judgment, from which the parties filed separate appeals. *Reversed in part*; *judgment directed*.

*Timothy S. Hollister*, with whom were *Andrea L. Gomes* and, on the brief, *Joette Katz* and *Jessica Colin-Greene*, for the appellant in Docket No. SC 20237 and the appellee in Docket Nos. SC 20238 and SC 20239 (intervening defendant).

*Charles R. Andres*, for the appellant in Docket No. SC 20238 and the appellee in Docket Nos. SC 20237 and SC 20239 (named defendant).

*Maureen Danehy Cox*, with whom were *James K. Robertson*, *Jr.*, and *Jennifer Sills Yoxall*, for the appellant in Docket No. SC 20239 and the appellee in Docket Nos. SC 20237 and SC 20238 (plaintiff).

* May 22, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

Lime Rock Park, LLC *v.* Planning & Zoning Commission

VERTEFEUILLE, J. These appeals arise from the adoption by the defendant, the Planning and Zoning Commission (commission) of the Town of Salisbury (town), of certain amendments to the town's zoning regulations restricting motor vehicle racing activities on property owned by the plaintiff, Lime Rock Park, LLC. The plaintiff appealed to the trial court from the adoption of the amendments. Thereafter, the intervening defendant, Lime Rock Citizens Council, LLC (council), filed a motion to intervene in the appeal, which the trial court granted. After a trial to the court, the court sustained the plaintiff's appeal in part and dismissed it in part. All three parties appealed from the decision, raising numerous claims.[1] We conclude that the trial court incorrectly (1) sustained the portion of the plaintiff's appeal claiming that the provision of the amended regulations prohibiting racing activities on Sundays was preempted by General Statutes § 14-164a (a),[2] (2) denied the portion of the appeal claiming that the commission lacked the authority to condition the filing of a petition to amend the regulations on obtaining a special permit, and (3) concluded that the amended regulations prohibited racing activities on Saturdays. We further conclude that the trial court correctly (1) determined that the plaintiff did not waive its right to challenge the regulation prohibiting Sunday racing, and (2) denied the portion of the plaintiff's appeal claiming that the amendments'

_____

[1] Upon the granting of certification pursuant to General Statutes § 8-8 (o), the parties appealed to the Appellate Court, and we transferred the appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 14-164a (a) provides in relevant part: "No person shall operate a motor vehicle in any race, contest or demonstration of speed or skill with a motor vehicle as a public exhibition except in accordance with the provisions of this section. Such race or exhibition may be conducted at any reasonable hour of any week day or after twelve o'clock noon on any Sunday. The legislative body of the city, borough or town in which the race or exhibition will be held may issue a permit allowing a start time prior to twelve o'clock noon on any Sunday, provided no such race or exhibition shall take place contrary to the provisions of any city, borough or town ordinances. . . ."

Lime Rock Park, LLC *v.* Planning & Zoning Commission

restrictions on unmufflered racing are subject to the provision of General Statutes § 22a-73 (c), requiring the Commissioner of Energy and Environmental Protection to approve municipal noise control ordinances. Accordingly, we affirm in part and reverse in part the trial court's judgment.

The record reveals the following facts, which were found by the trial court or that are undisputed, and procedural history. It is appropriate to warn the reader at the outset that these facts reveal a long and complex history of disagreement between the owners of the property on which the racing activities take place and neighboring landowners regarding the use of the property. The plaintiff owns property located at 497 Lime Rock Road in the town (property). Since 1957, motor vehicle races and other contests and demonstrations of speed and skill have been conducted on a racetrack located on the property. In addition, the property has been the site of automobile shows and exhibitions, food concessions, camping, and television, movie and radio productions, with the associated use of lighting and sound equipment. At the time that these activities commenced in 1957, the town had no zoning regulations.

In 1958, a group of town residents and entities brought a nuisance action against the then owners of the property, in which they alleged that the racing activities on the property generated excessive noise, traffic and disruptive behavior that interfered with the plaintiffs' enjoyment of their property. See *Adams* v. *Vaill*, 158 Conn. 478, 480, 262 A.2d 169 (1969) (*Vaill III*) (discussing allegations of original nuisance action). After a hearing, the trial court in the nuisance action rendered judgment in favor of the plaintiffs and granted a permanent injunction prohibiting the property owners from conducting racing activities on Sundays. In addition, the injunction limited mufflered racing activities to weekdays between 9 a.m. and 10 p.m., and prohibited unmuf-

Lime Rock Park, LLC *v.* Planning & Zoning Commission

flered racing except during specified hours on Tuesdays, ten Saturdays per year, and certain holidays. See *Adams* v. *Vaill*, Superior Court, judicial district of Litchfield, Docket No. 15,459 (May 12, 1959) (*Vaill I*); see also *Vaill III*, supra, 480–81.

Shortly after the trial court rendered judgment in *Vaill I*, the town adopted zoning regulations for the first time. The regulations placed the property in a "Rural Enterprise" zoning district, in which a track for racing motor vehicles and accessory uses were permitted uses. Salisbury Zoning Regs. (1959) § 8.1.17. The regulations also allowed racing "during such hours as are permitted by [s]tatute." Id., § 8.1.17.1. At the time, the controlling statute provided that "any race, contest or demonstration of speed or skill with a motor vehicle as a public exhibition . . . may be conducted at any reasonable hour of any week day or after the hour of two o'clock in the afternoon of any Sunday, provided no such race or exhibition shall take place contrary to the provisions of any city, borough or town ordinances." General Statutes (1958 Rev.) § 29-143 (a).

In 1966, the parties to the *Vaill* case entered into a stipulation providing that the judgment in *Vaill I* would be modified to provide that the prohibition of Sunday racing applied to both mufflered and unmufflered racing, as well as several other changes. See *Adams* v. *Vaill*, Superior Court, judicial district of Litchfield, Docket No. 15,459 (March 2, 1966) (*Vaill II*) (stipulation between parties). The judgment was again modified in 1968 by a court order prohibiting unmufflered racing on the property. See *Adams* v. *Vaill*, Superior Court, judicial district of Litchfield, Docket No. 15,459 (August 26, 1968), aff'd, 158 Conn. 478, 262 A.2d 169 (1969). The impetus for this modification was the legislature's amendment of General Statutes (Cum. Supp. 1967) § 14-80 (c) to provide that the use of unmufflered motor vehicles was prohibited not only on public streets, but in

Lime Rock Park, LLC *v.* Planning & Zoning Commission

all locations. See *Vaill III*, supra, 158 Conn. 482–84; see also Public Acts 1967, No. 846 (deleting words "while such motor vehicle is being operated upon a street or highway" from statute prohibiting use of motor vehicles without mufflers).

In 1977 and 1978, a flurry of appeals were brought from certain decisions of the Salisbury Zoning Board of Appeals to the trial court regarding the activities that were permitted on the property (ZBA actions). The ZBA actions were resolved when the parties entered into a stipulation restricting the use of the property by campers and the hours that campers would be permitted to use the track entrance, as well as restricting the parking of nonofficial motor vehicles during certain hours of the day. Judgment was rendered accordingly in each of the ZBA actions (ZBA judgments).

At some point after March 11, 1974—the date on which the second revision to the Salisbury zoning regulations was adopted—and before February 23, 1981—the date on which the sixth revision was adopted—the commission amended the regulations applicable to racing activities on the property to provide that "[n]o races shall be conducted on any such track except during such hours as are permitted by [c]ourt [o]rder dated [May 12, 1959]," the date of the judgment in *Vaill I*.[3] Salisbury Zoning Regs. (1985) § 415.1. Before that amendment, the regulations continuously had provided that no races could be conducted "except during such hours as are permitted by [s]tatute." See Salisbury Zoning Regs.

_____

[3] The trial court noted that the parties were unable to provide any documentation regarding the adoption of this regulation. On the basis of a copy of the 1974 revision of the zoning regulations that contained handwritten references to the third through sixth revisions of the Salisbury zoning regulations, as well as a handwritten notation containing the text of the amendment referring to the judgment in *Vaill I*, the court found that the amendment had been adopted at some point between the adoption of the second and sixth revisions.

Lime Rock Park, LLC *v.* Planning & Zoning Commission

(1959) § 8.1.17.1; Salisbury Zoning Regs. (1974) § 415.1. In 1975, the commission again amended the regulations to provide that the operation of a commercial racetrack was a special permit use.[4] See Salisbury Zoning Regs. (1985) § 412.

In 1988, the parties to the *Vaill* case[5] entered into a stipulation to prohibit motorcycle racing on the property and to allow some unmufflered racing in recognition of the legislature's amendment to General Statutes (Supp. 1969) § 14-80 (c) in 1969 to provide an exception to the prohibition on using a motor vehicle without a muffler when the vehicle is operated in a race. See *Adams* v. *Vaill*, Superior Court, judicial district of Litchfield, Docket No. 15,459 (March 21, 1988) (*Vaill IV*) (stipulation between parties); see also Public Acts 1969, No. 17, § 1. The judgment was modified accordingly.[6] In 2013, the commission amended the regulations to provide that "[n]o races shall be conducted on any such

[4] Neither the parties nor the trial court has explained how the court arrived at its conclusion that this amendment was adopted in 1975. The conclusion is undisputed, however.

[5] At the time of the 1988 modification, the Lime Rock Protection Committee, Inc., had been substituted as the plaintiff in the *Vaill* case and the then owner of the property, Lime Rock Associates, Inc., had been substituted as the defendant.

[6] On September 4, 2015, the plaintiff in the present case, which is a defendant in the *Vaill* case, again sought to modify the injunction in *Vaill*. Specifically, in its motion, the plaintiff sought to modify the present terms of the injunction by, among other things, (1) allowing it to conduct unmufflered racing activities on one Sunday per year after 12 p.m., (2) allowing mufflered racing activities on twenty Sundays per year; (3) allowing a start time of 9 a.m. for mufflered racing activities in the "[u]pper [a]rea" of the property on Sundays and after 12 p.m. on the racetrack, (3) changing the racing start time on Fridays from 10 a.m. to 9 a.m. and changing the finish time on Saturdays from 6 p.m. to 7 p.m., (4) allowing unmufflered racing activities on Fridays, and (5) reducing the number of Tuesdays that the plaintiff can conduct unmufflered racing activities from fifty-two per year to twenty per year, and allowing the plaintiff to conduct unmufflered racing activities on five Thursdays per year instead of on Tuesdays. The proceedings on the plaintiff's motion for modification have been stayed pending resolution of these appeals.

Lime Rock Park, LLC *v.* Planning & Zoning Commission

track except during such hours as permitted by [c]ourt [o]rder dated [May 12, 1959] and subsequent related [c]ourt [o]rders on file in the Planning and Zoning Office, or the Town Clerk's Office.'' Salisbury Zoning Regs. (2013) § 221.2 (a).

The amendments to the town's zoning regulations that are the subject of the present appeals were adopted on November 16, 2015 (2015 amendments).[7] In its ruling approving the amendments, the commission stated that

---

[7] The 2015 amendments to the regulations provide: ''221.1 Track for Racing Motor Vehicles

''A track for racing motor vehicles, excluding motorcycles, as well as for automotive education and research in safety and for performance testing of a scientific nature, private auto and motorcycle club events, car shows, and certain other events identified in section 221.2 are permitted subject to the issuance of a special permit in compliance with the procedures and standards of these regulations and also subject to the following:

''a. No motor vehicle races shall be conducted on any such track except in accordance with the following parameters:

''(1) All activity of mufflered or unmufflered racing cars upon the asphalt track or in the paddock areas shall be prohibited on Sundays.

''(2) Activity with mufflered racing car engines shall be permitted as follows:

''A. On any weekday between [9 a.m.] and [10 p.m.] provided, however, that such activity may continue beyond the hour of [10 p.m.] without limitation on not more than six . . . occasions during any one calendar year.

''B. Permissible mufflers are those which meet the standards set forth in Section 14-80 (c) of the General Statutes of Connecticut, Revision of 1959, or as the same may be amended from time to time.

''(3) Activity with unmufflered racing car engines shall be permitted as follows:

''A. On Tuesday afternoon of each week between [12 p.m.] and [6 p.m.].

''B. On Saturdays, not more than ten . . . in number in each calendar year, between the hours of [9 a.m.] and [6 p.m.].

''C. On the ten . . . Fridays which precede the said ten . . . Saturdays between the hours of [10 a.m.] and [6 p.m.] for the purpose of testing, qualifying or performing such other activities as may be necessary or incidental to the direct preparation for races on the Saturdays specified, provided that no qualifying heats or races shall be permitted on such Fridays.

''D. In such event the scheduled activity for any of the said ten . . . Saturdays must be rescheduled for a 'rain date,' then the said 'rain date' and the Friday preceding it shall not be considered as one of the ten . . . days referred to in [p]aragraphs (b) and (c) above.

''E. On Memorial Day, Fourth of July and Labor Day between the hours of [9 a.m.] and [6 p.m.].

''(i) In the event any of said holidays falls on a Tuesday, Thursday or a Friday, there may be unmufflered activity on the day preceding the holiday between the hours of [12 p.m.] and [6 p.m.], but in the event the permissible

Lime Rock Park, LLC *v.* Planning & Zoning Commission

unmuffled activity of the Tuesday next preceding the holiday shall be forfeited.

"(ii) In the event any of said holidays falls on a Sunday, the next day (Monday) will be considered the holiday for these purposes.

"(iii) In no event shall any such holidays increase the number of Saturdays of permissible unmuffled activity beyond ten . . . as provided in [p]aragraph (b) above.

"(4) Prohibited activity upon the track property shall include the revving or testing of muffled or unmuffled car engines on Saturdays and permitted holidays prior to [9 a.m.] and after [6 p.m.], excepting the transportation of said vehicles to and from the paddock areas on or off their respective trailers, which transporting, unloading or loading shall not commence before 7:30 a.m. or extend beyond 7:30 p.m.

"(5) The use of the track loudspeakers before [8 a.m.] and after [7 p.m.] is prohibited.

"(6) A 'racing car,' for purposes of this subsection, is defined as any car entered in an event on an asphalt track.

"(7) Racing of motorcycles is prohibited. Nevertheless, specifically permitted are nonracing motorcycle activities including but not limited to demonstrations, instruction, timing, testing, practice and photography.

"(8) The parameters set forth in this subsection may be amended by the [c]ommission upon filing and approval of (1) a special permit application in compliance with all requirements of these regulations, including a site plan identifying the location of all uses, accessory uses, buildings, structures, pavement, and all other improvements on the relevant property, and amendments to any of the parameters set forth above; and (2) a petition to amend the zoning regulations setting forth alternative parameters for this subsection.

"b. Where the land on which a race track is situated abuts or faces a residential zone district, there shall be a minimum of fifty foot buffer strips along each yard, or part thereof, so abutting or facing, which shall contain a screen of shrubbery not less than fifteen feet in width nor less than six feet in height within one year of the adoption of this amendment to the regulations. This screen shall thereafter be suitably and neatly maintained by the owner, tenant and/or their agent. Any such screen shall consist of at least fifty percent evergreens so as to maintain a dense screen at all seasons of the year.

"c. The lot shall have adequate frontage on or access to a principal traffic street or street capable of handling the volume of traffic to be generated thereon. The access and service roads connecting with the principal traffic street or streets shall be so located and designed as to avoid unsafe traffic conditions or congestion. Traffic control devices and lighting of access points at or across street or access intersections shall be provided at the expense of the owner when required and provision shall be made for safe pedestrian traffic to, from and within the lot. The design and location of access and intersections with public highways shall be subject to the approval of the [s]electmen for a town road or the Connecticut Department of Transportation for a state highway.

"d. Adequate off-street parking shall be provided to accommodate the vehicles of employees, proprietors, participants, customers, visitors and others.

Lime Rock Park, LLC *v.* Planning & Zoning Commission

"e. Not more than three signs, not more that [fifty] square feet each, advertising the use of the premises shall be permitted. Any sign not consistently visible from off the premises is permitted. Directional signs, not more than six square feet each, are permitted.

"f. No sign, with the exception of scoreboards, visible off the premises shall be illuminated by exposed tubes or other exposed light sources, nor shall any flashing sign be visible from off the premises. Spot or other lighting of any sign, building, structure, land track, parking space or any other part of the premises shall be so arranged that the light source is not visible from any point off the premises.

"221.2 Accessory [u]ses to a track for racing motor vehicles may include: retail stores, professional or business offices, fire or emergency services, ATMs, restaurants, and food stands. Accessory uses may also include the use of the premises for automobile shows, sale of motor vehicles during racing events, sale of automotive parts and accessories; car washes, auto service and repairs; filling stations; commercial parking; laundry; equipment storage; racing schools and clubs; indoor theaters; and other similar activities that are accessory to the operation of a recreational race track herein permitted. Other accessory uses may include the production, showing, or performance of television, motion picture or radio programs with their related lighting and sound equipment.

"221.3 Camping by spectators and participants is allowed as an accessory use to permissible automobile racing events subject to the following restrictions:

"a. All camping and camping vehicles shall be limited to locations within the infield of any asphalt race track existing as of the effective date of this regulation.

"b. No motor vehicles shall be parked in any [r]ace [t]rack outfield during the hours of [10 p.m.] to [6 a.m.] except those which are (1) on official track business; and (2) parked in the parking lot existing as of the effective date of this regulation.

"c. No traffic other than emergency or service vehicles shall be allowed between the hours of [11 p.m.] and [6 a.m.] on any accessway into any race track that abuts property located at 52 White Hollow Road.

"d. The standards set forth in this subsection may be amended by the [c]ommission upon filing and approval of (1) a special permit application in compliance with all requirements of these regulations, including a site plan identifying the location of all uses, accessory uses, buildings, structures, pavement, and all other improvements on the relevant property, and amendments to any of the restrictions set forth above; and (2) a petition to amend the zoning regulations setting forth alternative standards for this subsection.

"221.4 The following uses are deemed not to be accessory uses to a track for racing motor vehicles but are allowed subject to a special permit: Fireworks displays (with the exception of a single evening display during the annual Independence Day period in early July for charitable purposes), concerts, flea markets, craft fairs, food shows, non-automotive trade shows, and garden shows.

"221.5 If the holder of a special permit for a track for motor vehicle racing leases or otherwise authorizes a private organization to use all or part of

Lime Rock Park, LLC *v.* Planning & Zoning Commission

the amendments were intended to maintain the status quo by codifying the restrictions on racing activities that were already part of the town's zoning scheme by virtue of the previous regulations incorporating the terms of the stipulated judgment in *Vaill IV* and the ZBA judgments. The plaintiff appealed from the commission's adoption of the amendments pursuant to General Statutes §§ 8-8 and 8-9 on the ground that the commission had "acted illegally, arbitrarily, capriciously and in abuse of its discretion" when it adopted them. Specifically, the plaintiff contended that the amendments violated the requirement of General Statutes § 8-2[8] that zoning regulations be in conformity with the comprehensive plan; § 8-2 does not authorize the commission to engraft restrictions contained in judicial judgments into the zoning regulations; and the amendments did not serve any legitimate land use purpose. In addition, the plaintiff contended that the regulations limiting days and hours of racing activities were

its property to a third party, it shall require said party to comply with all provisions of these regulations, the special permit, and its conditions.

"221.6 If any portion of this section . . . shall be found by a court of competent jurisdiction to be illegal, it is the intent of this [c]ommission no part of [this] [s]ection . . . shall remain valid, including the amended table of uses adopted simultaneously herewith providing that a track for racing of motor vehicles shall be allowed by special permit in the [rural enterprise] [d]istrict; it being the intent of the [c]ommission that, if it is found that the [c]ommission lacks authority to regulate any aspect of [r]ace [t]rack use as set forth herein, then a track for [r]acing of [m]otor [v]ehicles shall be found to not be permitted in the [rural enterprise] [d]istrict, and any race track use in existence at the time of the adoption of these regulations shall have such rights as may exist as a nonconforming use under these regulations and Connecticut law." (Footnote omitted.) Salisbury Zoning Regs. (2015) §§ 221.1 through 221.6.

We note that paragraph (a) of § 221.1 includes the following footnote: "The parameters set forth [in paragraph (a)] are identical to those set forth in [the amended judgment in *Vaill IV*], which parameters were previously incorporated by reference in the zoning regulations." Salisbury Zoning Regs. (2015) § 221.1 (a) n.1.

Section 221.6 of the 2015 amendments was repealed on April 6, 2016.

[8] General Statutes § 8-2 (a) provides in relevant part: "The zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality . . . the location and use of buildings, structures and land for trade, industry, residence or other purposes . . . ."

Lime Rock Park, LLC *v.* Planning & Zoning Commission

preempted by § 14-164a (a); the regulations restricting unmufflered racing improperly regulated noise in violation of the requirement of § 22a-73 (c) that the Commissioner of Energy and Environmental Protection approve municipal noise control ordinances; the commission exceeded its authority under General Statutes § 8-3 (c) by requiring the plaintiff to file an application for a special permit, as well as a site plan, as a condition for seeking an amendment to the regulations; the regulations constituted illegal spot zoning; and the regulations did not conform to the town's plan of conservation and development. The commission and the council disputed these claims. In addition, the council contended that the plaintiff had waived its right to challenge the provision of the 2015 amendments prohibiting Sunday racing because its predecessor in interest had stipulated to that limitation on the use of the property in *Vaill II* and *Vaill IV*, which the amendments were intended to codify.

After a trial, the trial court concluded that the commission had not exceeded the authority conferred by § 8-2 when it adopted the 2015 amendments incorporating the terms of the stipulated judgments in *Vaill II* and *Vaill IV* and the ZBA judgments; § 14-164a (a) did not preempt the commission from regulating the hours of racing activities on weekdays but did preempt the commission from prohibiting racing on Sundays; the restrictions on unmufflered racing do not constitute a noise control ordinance subject to § 22a-73 (c); it was within the commission's authority to require the plaintiff to file an application for a special permit before it could seek an amendment to the regulations; the amendments did not constitute illegal spot zoning; and the amendments conformed to the town's plan of conservation and development.[9] In addition, the court determined that, because the amendments permitted

[9] The trial court issued its first memorandum of decision on January 31, 2018, sustaining the appeal in part and denying it in part, and it rendered

Lime Rock Park, LLC *v.* Planning & Zoning Commission

mufflered racing only on any "weekday," which the court concluded means Monday through Friday, they did not allow mufflered racing on Saturdays.[10] The court rejected the council's claim that the plaintiff, through its predecessor in interest, had waived any right to challenge the prohibition on Sunday racing when it entered into the stipulations that the amendments were intended to codify. Accordingly, the court sustained the portion of the plaintiff's appeal challenging § 221.1 (a) (1) of the 2015 amendments, which prohibits all racing activities on Sundays; see footnote 7 of this opinion; and denied the appeal in all other respects.

These appeals followed. See footnote 1 of this opinion. The council claims in its appeal that the trial court incorrectly determined that the plaintiff had not waived its right to challenge the 2015 amendments' prohibition on Sunday racing. In addition, both the council and the commission claim that the court incorrectly determined that § 14-164a (a) preempts the regulation prohibiting racing activities on Sundays. The plaintiff contends that the trial court incorrectly concluded that (1) the 2015 amendments allow mufflered racing only on any weekday, which does not include Saturdays,[11] (2) if the 2015

judgment accordingly. Thereafter, all three parties filed motions to reargue. The trial court granted the motions to reargue, opened the judgment and issued an amended memorandum of decision on July 17, 2018, which superseded the original memorandum of decision in all respects.

[10] The parties did not address in the proceedings before the trial court the issue of whether the word "weekday," as used in the amendments, includes Saturdays. The commission and the plaintiff appear to have assumed that "weekday" includes Saturdays, whereas the council appears to have assumed that it does not. The trial court reached its conclusion that mufflered racing is not allowed on Saturdays in the portion of its memorandum of decision summarizing the contents of the amendments.

[11] As we have explained, the plaintiff did not raise this claim in the proceedings before the trial court but appears to have assumed, sub silentio, that the word "weekday," as used in the 2015 amendments, includes Saturdays, whereas the council appears to have made the contrary assumption. See footnote 10 of this opinion. Because the record is adequate for review, the parties have briefed the issue, and neither the commission nor the council objects to our review, we review the claim.

Lime Rock Park, LLC *v.* Planning & Zoning Commission

amendments prohibit mufflered racing on Saturdays, that prohibition was not preempted by § 14-164a (a), (3) the 2015 amendments' restrictions on unmufflered racing are not subject to the provisions of § 22a-73 (c), and (4) the commission had the authority to adopt the regulations requiring the plaintiff to obtain a special permit as a precondition to seeking an amendment to the regulations.

I

Because it is potentially dispositive, we first address the council's claim that the plaintiff waived its right to challenge § 221.1 (a) (1) of the 2015 amendments, which prohibits racing activities on the property on Sundays, because its predecessor in interest stipulated in *Vaill II* and *Vaill IV* to that limitation on the use of the property, and the plaintiff and its predecessor have continuously abided by those stipulations.[12] The council contends that, unlike an injunctive order, a stipulated judgment is a contract between the parties and is not subject to later modification by the trial court in light of changed circumstances. In addition, the council claims that, even if the stipulated judgments were subject to modification, the plaintiff waived its right to challenge the prohibition on Sunday racing when it and its predecessor in interest failed to appeal from previous amendments to the zoning regulations that codified the terms of the stipulated judgments. The plaintiff contends that it did not waive its right to challenge the prohibition on Sunday racing because (1) the stipulated judgments were injunctive in nature, and courts always retain juris-

_____

[12] After the plaintiff, which is a defendant in the *Vaill* case, filed a motion to modify the judgment in *Vaill*, the council filed a motion to intervene in that case, which the trial court granted. The commission states in its brief to this court that, "because the council's waiver argument relies on specific pleadings and stipulations in a matter [in which] the commission is not a party," it took no position on this claim in the trial court and takes no position on the council's claim on appeal.

Lime Rock Park, LLC *v.* Planning & Zoning Commission

diction to modify injunctions in light of changed circumstances, and (2) even if the plaintiff waived its right to seek later modifications of the stipulated judgments, that waiver does not apply to its right to challenge the amendments to the zoning regulations. We agree with the plaintiff that the stipulated judgments were injunctive in nature and, therefore, were subject to the ongoing jurisdiction of the trial court to modify them in light of changed circumstances. Accordingly, we reject the council's claim that the plaintiff waived its right to challenge the prohibition on Sunday racing.

We begin with the standard of review. Ordinarily, whether a person has waived a right is a question of fact subject to review for clear error. See *AFSCME, Council 4, Local 704* v. *Dept. of Public Health*, 272 Conn. 617, 622, 866 A.2d 582 (2005). "[W]hen a trial court makes a decision based on pleadings and other documents, [however] rather than on the live testimony of witnesses, wereview its conclusions as questions of law." *State* v. *Lewis*, 273 Conn. 509, 516–17, 871 A.2d 986 (2005). Because the trial court's determination in the present case was based solely on the pleadings and stipulated judgments, our review is plenary.

We next review the substantive law of waiver. "Waiver is the intentional relinquishment or abandonment of a known right or privilege." (Internal quotation marks omitted.) *AFSCME, Council 4, Local 704* v. *Dept. of Public Health*, supra, 272 Conn. 623. "Waiver is based upon a species of the principle of estoppel and where applicable it will be enforced as the estoppel would be enforced. . . . Estoppel has its roots in equity and stems from the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights [that] might perhaps have otherwise existed . . . . Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reason-

Lime Rock Park, LLC *v.* Planning & Zoning Commission

able to do so.'' (Citations omitted; internal quotation marks omitted.) Id.

In support of its claim that the plaintiff waived its right to challenge the 2015 amendments' prohibition on Sunday racing, the council relies heavily on the principle that a stipulated judgment constitutes "a contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction.'' *Bryan* v. *Reynolds*, 143 Conn. 456, 460, 123 A.2d 192 (1956). "The essence of the [stipulated] judgment is that the parties to the litigation have voluntarily entered into an agreement setting their dispute or disputes at rest and that, upon this agreement, the court has entered judgment conforming to the terms of the agreement.'' Id. "It necessarily follows that if the judgment conforms to the stipulation it cannot be altered or set aside without the consent of all the parties, unless it is shown that the stipulation was obtained by fraud, accident or mistake.'' Id., 460–61.

Thus, the council contends that (1) unlike an ordinary judgment granting a permanent injunction in a private nuisance action, which can be modified if relevant circumstances change; see *Vaill III*, supra, 158 Conn. 482 ("[i]t cannot be doubted that courts have inherent power to change or modify their own injunctions where circumstances or pertinent law have so changed as to make it equitable to do so"); a stipulated judgment in a private nuisance action cannot be modified in the absence of a showing of fraud, accident or mistake, and (2) when a party has stipulated to a permanent, unmodifiable limitation on the use of a particular property in a private nuisance action, the party has implicitly waived the right to challenge any *zoning regulation* that is consistent with that limitation.[13] In other words,

_____

[13] We note that the plaintiff makes no claim that the stipulations in *Vaill II* and *Vaill IV* are not binding on it or that, if its predecessor in interest waived the right to challenge amendments to the zoning regulations that were consistent with the terms of those stipulations, it would not be bound by that waiver. It claims only that there was no such waiver.

Lime Rock Park, LLC *v.* Planning & Zoning Commission

the council contends the plaintiff's predecessor in interest waived the right to challenge any zoning regulation codifying the terms of the stipulated judgments because the stipulations were *not* modifiable injunctions.

We are not persuaded. Although a stipulated judgment has attributes of a private contract that "merely memorializes the bargained for position of the parties"; *Williams* v. *Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983); "[t]he terms of [a stipulated judgment or consent] decree, unlike those of a simple contract, have unique properties. A consent decree has attributes of both a contract and of a judicial act." Id.; see also id. ("[a] consent decree . . . is also a final judicial order"). Accordingly, "[o]nce approved, the prospective provisions of the consent decree *operate as an injunction.* . . . The injunctive quality of consent decrees compels the court to: [1] retain jurisdiction over the decree during the term of its existence . . . [2] protect the integrity of the decree with its contempt powers . . . and [3] *modify the decree should changed circumstances subvert its intended purpose.*" (Citations omitted; emphasis added; internal quotation marks omitted.) Id.

Similarly, the court in *Mendly* v. *Los Angeles*, 23 Cal. App. 4th 1193, 28 Cal. Rptr. 2d 822 (1994), observed that, "[i]n a stipulated judgment, or consent decree, litigants voluntarily terminate a lawsuit by assenting to specified terms, which the court agrees to enforce as a judgment. . . . As the [California Supreme Court] has recognized, stipulated judgments bear the earmarks both of judgments [rendered] after litigation and contracts derived through mutual agreement . . . . It is settled that where there has been a change in the controlling facts upon which a permanent injunction was granted, or the law has been changed, modified or extended, or where the ends of justice would be served by modification or dissolution, the court has the inherent power to vacate or modify an injunction where the

Lime Rock Park, LLC *v.* Planning & Zoning Commission

circumstances and situation of the parties have so changed as to render such action just and equitable. . . . This principle governs even though the judgment providing the injunctive relief is predicated upon stipulation of the parties.'' (Citations omitted; internal quotation marks omitted.) Id., 1206–1207; see also *Carson* v. *American Brands, Inc.*, 450 U.S. 79, 84 n.9, 101 S. Ct. 993, 67 L. Ed. 2d 59 (1981) (characterizing prospective relief obtained in consent decree as injunctive); *Steele* v. *Guardianship & Conservatorship of Crist*, 251 Kan. 712, 719–20, 840 P.2d 1107 (1992) (quoting *Williams* v. *Vukovich*, supra, 720 F.2d 920, with approval); 46 Am. Jur. 2d 569, Judgments § 190 (2017) (''[P]rospective provisions of a consent decree operate as an injunction. This injunctive quality compels the court to: (1) retain jurisdiction over the decree during the terms of its existence; (2) protect the integrity of the decree with its contempt powers; and (3) modify the decree should changed circumstances subvert its intended purpose.'' (Footnote omitted.));[14] cf. *Housing Authority* v. *Lamothe*, 225 Conn. 757, 767, 627 A.2d 367 (1993) (''[a] stipulated judgment, although obtained by the consent of the parties is binding *to the same degree as a judgment obtained through litigation*'' (emphasis added; internal quotation marks omitted)).

We agree with these authorities that the prospective provisions of a stipulated judgment are injunctive in nature and, therefore, may be modified by the court upon a showing of changed circumstances. We further

_____

[14] Indeed, we note that, under Connecticut law, a restrictive covenant running with the land, which is a *purely private* agreement, may be modified in light of changed circumstances. See, e.g., *Bueno* v. *Firgeleski*, 180 Conn. App. 384, 396, 183 A.3d 1176 (2018). Accordingly, even if the plaintiff were correct that the stipulations in *Vaill II* and *Vaill IV* effectively constituted restrictive covenants that run with the land, that would not mean that the owners of the property would be bound by the terms of the stipulations *forever*, regardless of whether a change in circumstances subverted their purpose.

Lime Rock Park, LLC *v.* Planning & Zoning Commission

note that the council does not dispute that a stipulated judgment can always be modified by consent of all of the parties. See *Gillis* v. *Gillis*, 214 Conn. 336, 340, 572 A.2d 323 (1990). We therefore reject the council's claim that, by entering into the stipulated judgments, the plaintiff's predecessor in interest somehow permanently waived the right of its successors in interest to seek any modification of the stipulations. Accordingly, we reject the council's claim that, by waiving its right to modify the stipulations, the plaintiff's predecessor in interest waived its successors' right to challenge zoning regulations that codified the terms of the stipulations.

To the extent that the council claims that, even if the stipulated judgments were injunctive in nature, the plaintiff and its predecessor in interest waived the right to challenge any modifications to the zoning regulations that codified the stipulations by abiding by their terms for almost fifty years, we disagree. We are unaware of any authority for the proposition that a party waives the right to seek a modification of an injunctive order by abiding by its terms, much less that the party waives the right to challenge the codification of the various orders and stipulations in zoning regulations.[15]

The council finally claims that the plaintiff waived its right to challenge the 2015 amendments' prohibition on Sunday racing when it and its predecessor in interest failed to challenge previous regulations that prohibited Sunday racing, specifically, the 1975 amendment providing that "[n]o races shall be conducted on any such track except during such hours as are permitted by [c]ourt [o]rder dated [May 12, 1959, in *Vaill I*]"; Salis-

_____

[15] We acknowledge that it is possible that the plaintiff's actions may have given rise to reliance interests the trial court could consider when determining whether the injunction should be modified. That question, however, is not before the court in the present case, and we express no opinion on it. We conclude only that the plaintiff is not *barred* from ever challenging the terms of the stipulations in any forum merely because it abided by their terms.

Lime Rock Park, LLC *v.* Planning & Zoning Commission

bury Zoning Regs. (1985) § 415.1; and the 2013 amend-
ment, which provided that "[n]o races shall be con-
ducted on any such track except during such hours as
permitted by [c]ourt [o]rder dated [May 12, 1959, in
*Vaill I*] and subsequent related [c]ourt [o]rders on file
in the Planning and Zoning Office, or the Town Clerk's
Office." Salisbury Zoning Regs. (2013) § 221.2 (a). The
council contends that the plaintiff "forfeit[ed]" its right
to appeal because the 2015 amendments merely recodi-
fied the previous prohibition on Sunday racing activ-
ities.

We decline to review this claim because it is inade-
quately briefed. First, the council has provided no author-
ity or analysis to support its claim that a party's failure
to challenge a zoning amendment bars the party from
challenging a subsequent amendment that was intended
to recodify the original amendment in different lan-
guage.[16] Second, and perhaps more fundamental, it is
far from clear that the purpose of the 2015 amendments
was merely to recodify the previous amendments, and
the council has provided no analysis on that issue.[17]

---

[16] The council cites authority for the proposition that, when an appeal
from a zoning decision is available, a party cannot forgo the appeal and
later bring a collateral attack on the decision. See *Cavallaro* v. *Durham*,
190 Conn. 746, 748, 462 A.2d 1042 (1983) ("[a]n independent action may not
be used to test the very issue [that] an appeal is designed to test"). This
begs the question, however, by assuming that an appeal from an amendment
to the zoning regulations that purportedly recodifies a preexisting regulation
in different language constitutes an impermissible collateral attack on the
original regulation, which is the very claim that the council is making in
the first instance.

[17] The council does contend that the trial court incorrectly found that the
2015 amendments did not merely recodify the 2013 amendment because
the 2013 amendment restricted only the *hours* that racing activities were
permitted on the property and did not prohibit racing on Sundays. We agree
with the council and the commission that, by incorporating the order in
*Vaill I*, as subsequently modified, the 2013 amendment prohibited racing
activities on the property on Sundays because the order, as modified, permit-
ted *zero* hours of racing activities on Sundays. Thus, the prohibition on
Sunday racing in the 2015 amendments recodified that prohibition.

Lime Rock Park, LLC *v.* Planning & Zoning Commission

Specifically, although it is clear that, before the 2015 amendments were adopted, the substance of the regulations would be effectively modified whenever the judgment in the *Vaill* case was modified, it is not entirely clear whether that feature of the regulations survived the amendments. As the trial court noted, counsel for the commission, Charles R. Andres, acknowledged, during a November 16, 2015 meeting of the commission to deliberate on the 2015 amendments, that the 2013 amendment was ambiguous as to whether its reference to the "[c]ourt [o]rder . . . and subsequent related [c]ourt [o]rders" was intended to include modifications to the injunction in *Vaill I* that were made subsequent to the adoption of the amendment. Salisbury Zoning Regs., (2013) § 221.2 (a). Andres questioned whether an arrangement under which the town's zoning regulations would be effectively amended by modifying an injunction in a private nuisance action would be *legal*, but he acknowledged that the 2013 amendment could be interpreted in that manner and argued that the 2015 amendments were intended to remove that ambiguity.[18] Moreover, in the council's written presentation to the commission in support of the proposed amendments, which was presented to the town on October 19, 2015, the council contended that the use of the property was controlled by various orders and stipulations in the *Vaill* case, that "the burden of monitoring, enforcing, and reacting to proposed modifications to the injunctions and stipulations, and expansions or modifications

---

[18] We recognize that, at a September 8, 2015 public hearing on the proposed amendments, the chairman of the commission, Michael W. Klemens, indicated that he did not believe that the 2013 amendment was intended to incorporate modifications to the injunction in the *Vaill* case that occurred after the date that the amendment was adopted. We emphasize that we express no opinion as to whether this position was correct. Rather, we decline to review the council's claim that the plaintiff forfeited its right to challenge the 2015 amendment when it failed to appeal from the 2013 amendment because the council has provided no analysis on this issue in its brief to this court.

Lime Rock Park, LLC *v.* Planning & Zoning Commission

of operations, is placed on the private parties [to the *Vaill* case]''; (emphasis omitted); and that the amendments were necessary to bring the racing activities on the property ''under the control of the town through its zoning regulations.'' The council also pointed out that the plaintiff was attempting to expand racing activities on the property in its September 4, 2015 motion to modify the injunction in the *Vaill* case; see footnote 6 of this opinion; thereby ''underscor[ing]'' the need for the zoning regulations.

Thus, the council implicitly acknowledged in the proceedings before the commission that the 2013 amendment left control of the hours that racing activities would be permitted on the property to the ongoing jurisdiction of the trial court in the *Vaill* nuisance action, that, if the trial court in *Vaill* were to modify the injunction to eliminate the prohibition on Sunday racing activities, the 2013 amendment would not operate independently to prohibit them, and that the 2015 amendments were intended to remedy that situation. Indeed, the commission stated expressly in its reasons for approving the 2015 amendments that one reason was to ''eliminate the possibility that the zoning regulations could be deemed to be amended if there were to be an amendment to a court judgment in the *Vaill* [case].'' If the 2015 amendments in fact had that effect, they would not merely have recodified the 2013 amendment, because, unlike that amendment, they froze in time the restrictions on the use of the property that were already in place in the *Vaill* case, subject only to the procedures for amending zoning regulations. Even if we were to assume that the council is correct that a party cannot challenge an amendment to zoning regulations that merely recodifies a preexisting regulation, the council provides no analysis explaining why that change would not be substantive or, if it was, why the plaintiff would be barred from challenging it because it failed to challenge the 2013 amend-

Lime Rock Park, LLC *v.* Planning & Zoning Commission

ment. Accordingly, for all of the foregoing reasons, we reject the council's claim that the trial court incorrectly determined that the plaintiff did not waive its right to challenge the 2015 amendments' prohibition on Sunday racing.

II

We next address the defendant's claim that the trial court incorrectly determined that § 14-164a (a) preempts § 221.1 (a) (1) of the 2015 amendments, prohibiting racing activities on the property on Sundays.[19] We conclude that § 14-164a (a) is a prohibitory statute[20] and does not preempt zoning regulations restricting the hours of racing activities on the property on any day of the week or hour of the day, or regulations prohibiting such activities altogether.

The issues raised by the parties require us to interpret § 14-164a (a). "Issues of statutory construction raise

[19] For its part, the plaintiff contends that the trial court incorrectly determined that the commission could regulate weekday racing activities in any manner under § 14-164a (a), except to ensure that the activities occurred at reasonable hours. Thus, the plaintiff appears to contend that the commission cannot prohibit racing activities during reasonable hours on weekdays. Because the plaintiff makes no claim that the 2015 amendments actually prohibit weekday racing during reasonable hours, this claim is hypothetical, and we ordinarily would not address it. See, e.g., *Esposito* v. *Specyalski*, 268 Conn. 336, 350, 844 A.2d 211 (2004) ("[w]e are not compelled to decide claims of right which are purely hypothetical or are not of consequence as guides to the present conduct of the parties" (internal quotation marks omitted)). We note, however, that it necessarily follows from our conclusion that § 14-164a (a) does not preempt towns from adopting zoning regulations that are more restrictive of Sunday racing activities than the statute because the statute is prohibitory in that the statute would not preempt the commission from prohibiting racing activities during any hours on any day of the week.

[20] As we explain more fully subsequently in this opinion, a prohibitory statute is a statute that *restricts* the subjects of the statute from engaging in certain activities, in contrast to a permissive statute, which confers permission to engage in certain activities. When a statute is prohibitory, towns cannot permit activities that the statute prohibits, whereas, if a statute is permissive, towns cannot prohibit activities that the statute permits.

Lime Rock Park, LLC *v.* Planning & Zoning Commission

questions of law, over which we exercise plenary review. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter . . . .'' (Citation omitted; internal quotation marks omitted.) *State* v. *Moreno-Hernandez*, 317 Conn. 292, 299, 118 A.3d 26 (2015).

We next review the legal principles governing statutory preemption of local regulations. ''[A] local ordinance is preempted by a state statute whenever the legislature has demonstrated an intent to occupy the entire field of regulation on the matter . . . or . . . whenever the local ordinance irreconcilably conflicts with the statute. . . . Whether an ordinance conflicts with a statute or statutes can . . . be determined [only] by reviewing the policy and purposes behind the statute and measuring the degree to which the ordinance frustrates the achievement of the state's objectives.'' (Internal quotation marks omitted.) *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 232, 662 A.2d 1179 (1995).

''A test frequently used to determine whether a conflict exists is whether the ordinance permits or licenses

Lime Rock Park, LLC *v.* Planning & Zoning Commission

that which the statute forbids, or prohibits that which the statute authorizes; if so, there is a conflict. If, however, both the statute and the ordinance are prohibitory and the only difference is that the ordinance goes further in its prohibition than the statute, but not counter to the prohibition in the statute, and the ordinance does not attempt to authorize that which the legislature has forbidden, or forbid that which the legislature has expressly authorized, there is no conflict.'' (Internal quotation marks omitted.) Id., 235.

As we noted, ''[w]hether an ordinance conflicts with a statute or statutes can . . . be determined [only] by reviewing the policy and purposes behind the statute and measuring the degree to which the ordinance frustrates the achievement of the state's objectives. . . . Therefore, [t]hat a matter is of concurrent state and local concern is no impediment to the exercise of authority by a municipality through the enactment of an ordinance, so long as there is no conflict with the state legislation. . . . Where the state legislature has delegated to local government the right to deal with a particular field of regulation, the fact that a statute also regulates the same subject in less than full fashion does not, ipso facto, deprive the local government of the power to act in a more comprehensive, but not inconsistent, manner. . . .

''Therefore, merely because a local ordinance, enacted pursuant to the municipality's police power, provides higher standards than a statute on the same subject does not render it necessarily inconsistent with the state law. Whether a conflict exists depends on whether the ordinance permits or licenses that which the statute forbids, or prohibits that which the statute authorizes. If, however, both the statute and the ordinance are prohibitory and the only difference is that the ordinance goes further in its prohibition than the statute, but not counter to the prohibition in the statute, and the ordinance does

Lime Rock Park, LLC *v.* Planning & Zoning Commission

not attempt to authorize that which the legislature has forbidden, or forbid that which the legislature has expressly authorized, there is no conflict. . . . Where a municipal ordinance merely enlarges on the provisions of a statute by requiring more than a statute, there is no conflict unless the legislature has limited the requirements for all cases." (Citations omitted; internal quotation marks omitted.) *Modern Cigarette, Inc.* v. *Orange*, 256 Conn. 105, 119–20, 774 A.2d 969 (2001).

Thus, the question that we must address is whether § 14-164a (a) was intended only to *prohibit* racing activities during unreasonable hours on weekdays and before noon on Sundays without a permit, as the council and the commission claim, in which case the commission would not be preempted from adopting more restrictive regulations, or, instead, the statute was intended to *confer the absolute right* to conduct racing activities during reasonable hours on weekdays and after noon on Sundays, as the plaintiff claims, in which case the statute would preempt more restrictive local regulations.

We begin our analysis with a review of the language of the statute. Section 14-164a (a) provides in relevant part: "No person shall operate a motor vehicle in any race, contest or demonstration of speed or skill with a motor vehicle as a public exhibition except in accordance with the provisions of this section. Such race or exhibition may be conducted at any reasonable hour of any week day or after twelve o'clock noon on any Sunday. The legislative body of the city, borough or town in which the race or exhibition will be held may issue a permit allowing a start time prior to twelve o'clock noon on any Sunday, provided no such race or exhibition shall take place contrary to the provisions of any city, borough or town ordinances. . . ."

We conclude that § 14-164a (a) is ambiguous as to whether it is prohibitory or, instead, confers a right to engage in motor vehicle racing activities that conform

Lime Rock Park, LLC *v.* Planning & Zoning Commission

to the conditions of the statute. The first sentence of § 14-164a (a) is clearly prohibitory, and it strongly suggests that the legislature believed that, left unregulated, motor vehicle racing activities would be likely to create a nuisance. Thus, for preemption purposes, it would be reasonable to expect that the subsequent provisions of the statute would specify the *only* conditions under which towns *have the authority* to allow racing activities, not the conditions under which towns *are required* to allow racing. Taken in isolation, however, the second sentence reasonably can be read as conferring a right to engage in racing activities during reasonable hours on weekdays and after noon on Sundays, which would preempt towns from imposing more restrictive regulations. We conclude, therefore, that there is a tension between these sentences that gives rise to ambiguity.

In reaching the conclusion that § 14-164a (a) is ambiguous, we acknowledge that the third sentence of the statute allowing towns to issue permits to race before noon on Sundays "provided no such race . . . shall take place contrary to the provisions of any city, borough or town ordinances" (proviso clause) arguably supports the plaintiff's position that the statute confers the absolute right to conduct racing activities during reasonable hours on weekdays and before noon on Sundays, because, if the statute were prohibitory, the clause would be superfluous. General Statutes § 14-164a (a). In other words, if the statute was intended only to specify the conditions under which towns cannot *allow* racing, the preemption doctrine would not prevent towns from imposing stricter regulations, and there would be no need for the legislature to expressly confer the authority to do so. We also acknowledge that, as the trial court concluded, the grammatical structure of the third sentence and the statute as a whole supports the interpretation that the proviso clause modifies only the first clause

Lime Rock Park, LLC *v.* Planning & Zoning Commission

of the third sentence and not the second sentence.[21]
Finally, we acknowledge that, if the proviso clause is
not superfluous, and if it applies only to the first clause
of the third sentence of § 14-164a (a), it would be reason-
able to conclude that the second sentence was intended
to specify the racing activities that towns cannot pro-
hibit, not the *only* racing activities that towns can allow.
We conclude, however, that, although these considera-
tions arguably support the plaintiff's position that § 14-
164a (a) preempts towns from prohibiting racing activi-
ties that the statute permits, with the exception of racing
activities before noon on Sundays, they do not over-
come the inherent ambiguity of the statute. Accordingly,
we may "look for interpretive guidance to the legislative
history and circumstances surrounding its enactment,
to the legislative policy it was designed to implement,
and to its relationship to existing legislation and [com-
mon-law] principles governing the same general subject
matter . . . ." (Internal quotation marks omitted.)
*State* v. *Moreno-Hernandez*, supra, 317 Conn. 299.

In our search for guidance, we turn first to the geneal-
ogy of § 14-164a. As the trial court recognized, the legis-
lation that is now codified at § 14-164a (a) was first
enacted in 1935. See General Statutes (Cum. Supp. 1935)
§ 898c. Section 898c (a) provided that race contests that
were open to the public were prohibited unless the Com-

---

[21] In its primary brief to this court, the commission expounds at length
on its claim that the trial court's grammatical analysis was incorrect because
the word "provided" can be interpreted as meaning "and," in which case
the proviso clause would not be a dependent subordinate clause, but an
independent clause. Even if that were the case, however, the structure and
grammar of the statute would still support the conclusion that "such race,"
as used in the proviso clause, refers only to the races described in the first
clause of the third sentence, i.e., races before 12 p.m. on Sunday. We also
disagree with the commission's claim that the references to "such race" in
the first and third sentences of § 14-164 (a) must be interpreted as having
the same meaning, i.e., all races that the statute regulates. It is reasonable
to conclude that the phrase "such race" has the same meaning in the sense
that it refers to the immediately antecedent use of the word "race."

Lime Rock Park, LLC *v.* Planning & Zoning Commission

missioner of State Police issued a certificate approving the race, after determining that certain safety conditions were met. In 1939, the statute was amended to provide that the Commissioner of State Police was authorized to provide a racing permit "naming a definite date for such race or exhibition, which may be conducted at any reasonable hour on any week day or after the hour of two o'clock in the afternoon of any Sunday, provided no such race or exhibition shall take place contrary to the provisions of any city, borough or town ordinances." General Statutes (Supp. 1939) § 827e (a). Thus, the statute made clear for the first time that towns could prohibit racing activities on any day of the week or hour of the day.

In 1973, the statute was again amended to provide that the Commissioner of Motor Vehicles rather than the Commissioner of State Police could issue a permit for racing activities. See Public Acts 1973, No. 73-672, codified at General Statutes (Rev. to 1975) § 14-164a (a). The statute continued to provide that towns could prohibit such activities altogether. In 1975, the statute was amended to change the time that Sunday racing activities could start from 2 p.m. to 12 p.m. See Public Acts 1975, No. 75-404, § 1, codified at General Statutes (Rev. to 1977) § 14-164a (a).

After the legislature made additional changes to § 14-164a (a) in 1984 and 1985, the statute provided in relevant part: "The Commissioner of Motor Vehicles, upon receipt of such application and fee, shall cause an inquiry to be made concerning the condition of the race track or place of exhibition and all of the appurtenances thereto and, if he finds no unusual hazard to participants in such race or exhibition or to persons attending such race or exhibition, he may issue a permit naming a definite date for such race or exhibition, which may be conducted at any reasonable hour of any week day or after twelve o'clock noon on any Sunday, provided no such race or exhibition shall take place con-

Lime Rock Park, LLC *v.* Planning & Zoning Commission

trary to the provisions of any city, borough or town ordinances. . . .’’ General Statutes (Rev. to 1987) § 14-164a (a). Thus, towns were still expressly authorized to prohibit any or all motor vehicle racing.

In 1998, § 14-164a (a) was again amended to provide in relevant part:[22] ‘‘The Commissioner of Motor Vehicles, upon receipt of such application and fee, shall cause an inquiry to be made concerning the condition of the race track or place of exhibition and all of the appurtenances thereto and, if he finds no unusual hazard to participants in such race or exhibition or to persons attending such race or exhibition, he may issue a permit naming a definite date for such race or exhibition, which may be conducted at any reasonable hour of any week day or after twelve o’clock noon on any Sunday. [, provided] *The Commissioner, with the approval of the legislative body of the city, borough or town in which the race or exhibition will be held, may issue a permit allowing a start time prior to twelve o’clock noon on any Sunday, provided* no such race or exhibition shall take place contrary to the provisions of any city, borough or town ordinances. . . .’’ Public Acts 1998, No. 98-182, § 3 (P.A. 98-182), codified at General Statutes (Rev. to 1999) § 14-164a (a).

The final amendment to § 14-164a (a) that is relevant to this appeal was made in 2004. See 2004 Public Acts, No. 04-199, § 11. The 2004 amendment made the following changes:[23] ‘‘No person shall operate a motor vehicle in any race, contest or demonstration of speed or skill with a motor vehicle as a public exhibition [until a permit for such race or exhibition has been obtained from the Commissioner of Motor Vehicles] *except in accordance with the provisions of this section.* [Any person desiring to manage, operate or conduct such a motor

_____

[22] The language that was deleted in 1998 is indicated by brackets, and the language that was added is indicated by italics.

[23] Again, the language that was deleted is indicated by brackets, and the language that was added is indicated by italics.

Lime Rock Park, LLC *v.* Planning & Zoning Commission

vehicle race or exhibition shall make application in writ-
ing to said commissioner at least ten days prior to the
race or exhibition and such application shall set forth
in detail the time of such proposed race or exhibition,
together with a description of the kind and number of
motor vehicles to be used and such further information
as said commissioner may require. Such application shall
be accompanied by a fee of seventy-five dollars. The
Commissioner of Motor Vehicles, upon receipt of such
application and fee, shall cause an inquiry to be made
concerning the condition of the race track or place of
exhibition and all of the appurtenances thereto and, if
the commissioner finds no unusual hazard to partici-
pants in such race or exhibition or to persons attending
such race or exhibition, the commissioner may issue a
permit naming a definite date for such] *Such* race or
exhibition [, which] may be conducted at any reason-
able hour of any week day or after twelve o'clock noon
on any Sunday. The [commissioner, with the approval
of the] legislative body of the city, borough or town in
which the race or exhibition will be held [,] may issue
a permit allowing a start time prior to twelve o'clock
noon on any Sunday, provided no such race or exhibi-
tion shall take place contrary to the provisions of any
city, borough or town ordinances. . . .'' Public Acts
2004, No. 04-199, § 11, codified at General Statutes (Rev.
to 2005) § 14-164a (a).

The plaintiff contends that, when the legislature
amended the statute in 1998 by splitting the second sen-
tence of the statute into two sentences and leaving the
proviso clause attached only to the third sentence gov-
erning Sunday racing activities before noon, it evinced
an intent to confer the right to conduct racing activities
during reasonable hours on weekdays and after noon
on Sundays. For the following reasons, we disagree.

As the foregoing genealogy of § 14-164a shows, and
the plaintiff does not dispute, from 1939 through 1998,

Lime Rock Park, LLC *v.* Planning & Zoning Commission

§ 14-164a (a) and its predecessor statutes expressly contemplated that towns would have the authority to restrict racing activities that were statutorily permitted or to prohibit them altogether. Thus, during that period, the statute was clearly prohibitory for preemption purposes, that is, it barred towns from allowing racing activities that were statutorily prohibited. It did not require towns to allow racing activities that were statutorily permitted. It is reasonable to conclude that the legislature enacted the statutory prohibition on racing during unreasonable hours and on Sundays because it believed that motor vehicle racing, with its attendant noise, fumes, crowds, traffic congestion, danger to participants and spectators, and other potential disruptions, was likely to create a *nuisance* if not *restricted* by statute. Indeed, § 14-164a (d) imposes criminal penalties for violations of the statute. We cannot perceive why, in 1998, the legislature would suddenly have spun 180 degrees and come to the conclusion that motor vehicle racing is so *socially valuable* that it must be *protected* from unduly burdensome regulation by towns.

Indeed, nothing in the legislative history of P.A. 98-182 suggests that the purpose of the amendment, which split what previously had been one sentence into two sentences and left the proviso clause attached to the language in the new third sentence authorizing the Commissioner of Motor Vehicles to issue a permit for racing activities before noon on Sunday *subject to town approval*,[24] was to *divest* towns of their preexisting authority to further restrict or prohibit altogether racing activities that the statute permitted. To the contrary, José O. Salinas, the Commissioner of the Department of Motor Vehicles, submitted written testimony on the proposed legislation in which he stated that its purpose was to "place the decision to extend the operating hours of

_____

[24] As we explained, before the 1998 amendment, racing activities before 12 p.m. on Sunday were categorically prohibited.

Lime Rock Park, LLC *v.* Planning & Zoning Commission

[motocross] racing on Sundays at the municipal level
. . . .'' Conn. Joint Standing Committee Hearings,
Transportation, Pt. 2, 1998 Sess., p. 477; see also id., p.
374, remarks of Commissioner Salinas (purpose of pro-
posed legislation was ''to allow municipalities to extend
[motocross] racing [before] noon on Sundays''). Thus,
Salinas' testimony shows that the purpose of the amend-
ment was to *authorize* municipalities to *allow* racing
before noon on Sundays, subject to the permit require-
ment, not to deprive them of their preexisting authority
to *prohibit* racing activities after noon. If the legislature
had intended such a radical departure from the policy
underlying the original statute, it surely would have dis-
cussed that reason for the change during the debate on
the proposed legislation and used clearer language to
express its intent.[25] See, e.g., *Stafford* v. *Roadway*, 312
Conn. 184, 195, 93 A.3d 1058 (2014) (''It is axiomatic that
a radical departure from an established policy cannot be
implied. It must be expressed in unequivocal language.''
(Internal quotation marks omitted.)). Accordingly, it is
reasonable to conclude that the legislature split the
second sentence of § 14-164a (a) into two sentences in
1998 simply because the sentence had become unwieldy
with the addition of the new language, and that it left the
proviso clause in its previous location without realizing
that the change in sentence structure reasonably could
be interpreted as changing the function of the clause.

Moreover, under the plaintiff's interpretation, § 14-
164a (a) would be simultaneously prohibitory *and* per-
missive. That is, it would both categorically prohibit
racing activities that do not meet the statutory criteria—
i.e., racing activities on weekdays during unreasonable

_____

[25] The plaintiff concedes that nothing in the legislative history of P.A. 98-
182 indicates that the legislature intended to confer an absolute right to
conduct racing activities during reasonable hours on weekdays and after
noon on Sundays.

Lime Rock Park, LLC *v.* Planning & Zoning Commission

hours or before noon on Sunday without a permit[26]—
and confer an absolute right to conduct racing activities
that meet the statutory criteria. The plaintiff has cited
no other examples of statutes in which the legislature
has evinced an intent both to place restrictions on an
activity, presumably to mitigate its inherently danger-
ous and disruptive nature, and to confer an absolute
right to engage in the same activity. While we recognize
that such statutes may exist, it is reasonable to conclude
that they ordinarily would involve uses with extraordi-
nary social value, such as utilities or hospitals.[27] There
is no indication that the legislature attached such value
to motor vehicle racing activities.

Finally, we cannot perceive why the legislature would
suddenly have concluded in 1998 that it was necessary
to impose a uniform statewide rule allowing motor vehi-
cle racing activities seven days a week, regardless of
the character of the area in which the activities take
place. As the commission points out, racing activities

---

[26] Notwithstanding its contention that § 14-164a (a) is a "permissive" stat-
ute, the plaintiff does not appear to claim that towns could enact zoning
regulations that would, for example, permit racing activities twenty-four
hours a day, seven days a week. Any such interpretation would ignore the
first sentence of § 14-164a (a), providing that "[n]o person shall operate a
motor vehicle in any race . . . except in accordance with the provisions
of this section." It would also mean that there was no need for the legislature
to adopt the 1998 amendment to § 14-164a (a) authorizing the issuance of
a permit to conduct racing activities before noon on Sundays subject to the
approval of the municipality.

[27] For similar reasons, we reject the plaintiff's suggestion that towns have
the authority under § 8-2; see footnote 8 of this opinion; to prohibit racing
activities altogether and to prohibit them in certain zones, but, once towns
permit racing activities, they cannot regulate the days and hours on which
the activities occur more strictly than § 14-164a (a). First, this contention
seems to contradict claims made elsewhere by the plaintiff that § 14-164a
(a) grants an absolute right to conduct racing at certain hours on certain
days of the week and that the legislature "explicitly limit[ed] local control
to Sunday prenoon activities . . . ." Second, we cannot perceive why the
legislature would simultaneously conclude that racing activities are so poten-
tially disruptive and dangerous that they may be prohibited altogether but
are so socially valuable that, when they are allowed, they must be allowed
seven days a week during certain hours.

Lime Rock Park, LLC *v.* Planning & Zoning Commission

on Sunday afternoons in an indoor arena in a nonresidential, urban area may be entirely appropriate, whereas the same activities on an outdoor track in a heavily populated suburban location could be extremely disruptive. We conclude, therefore, that § 14-164a (a) does not preempt the provision of the 2015 amendments prohibiting racing activities on Sundays.[28]

In support of its claim to the contrary, the plaintiff contends that, "under the [commission's] interpretation, *whether* someone could conduct racing activities would always be based on the zoning regulations. As such, the [statutory seven day] grant [of permission to conduct racing activities during reasonable hours on weekdays, after noon on Sundays and before noon on Sundays with a permit] would be of no effect—and thus meaningless—with respect to *whether* someone could conduct racing activities." (Emphasis in original.) The statute is not meaningless if it is prohibitory, however, because it bars towns from allowing motor vehicle racing during unreasonable hours on weekdays and before noon on Sundays without a permit, which they otherwse would have the authority to do.

The plaintiff also contends that the trial court correctly concluded that the first sentence of General Statutes § 8-13,[29] which allows zoning commissions to adopt

—————

[28] Having concluded that § 14-164a (a) is prohibitory for preemption purposes, we need not address the plaintiff's claim that the trial court incorrectly determined that "week day," as used in § 14-164a (a), does not include Saturdays because, even if the plaintiff were correct, the statute would not preempt the commission from restricting Saturday racing activities more strictly than the statute. We address in part III of this opinion the plaintiff's claim that the trial court incorrectly concluded that the word "weekday," as used in the 2015 amendments, does not include Saturdays.

[29] General Statutes § 8-13 provides: "If the regulations made under authority of the provisions of this chapter require a greater width or size of yards, courts or other open spaces or a lower height of building or a fewer number of stories or a greater percentage of lot area to be left unoccupied or impose other and higher standards than are required in any other statute, bylaw, ordinance or regulation, the provisions of the regulations made under the provisions of this chapter shall govern. If the provisions of any other statute,

Lime Rock Park, LLC *v.* Planning & Zoning Commission

regulations that are more restrictive than restrictions
imposed by statute, does not authorize towns to adopt
stricter *temporal* limitations on particular land uses than
those imposed by statute. The trial court concluded that,
under this court's decision in *Mallory* v. *West Hartford*,
138 Conn. 497, 500, 86 A.2d 668 (1952), § 8-13 author-
izes zoning commissions only to adopt stricter physical
standards than those imposed by statute, such as the
"size of yards, number of stories and the like." Even if
that were the case, however, that would mean only that
§ 8-13 simply does not apply to the 2015 amendments,
not that it renders the 2015 amendments unenforce-
able. In other words, if the trial court were correct that
the first sentence of § 8-13 did not expressly authorize
the commission to adopt the 2015 amendments because
the statute applies only to physical standards, then the
second sentence providing that, "[i]f the provisions of
any other statute, bylaw, ordinance or regulation require
a greater width or size of yards, courts or other open
spaces or a lower height of building or a fewer number
of stories or a greater percentage of lot area to be left
unoccupied or impose other and higher standards than
are required by the regulations made under authority
of the provisions of this chapter, the provisions of such
statute, bylaw, ordinance or regulation shall govern,"
would not render the amendments unenforceable. If § 8-
13 does not apply to the temporal restrictions of the
2015 amendments, they would still be subject to com-
mon-law preemption principles, under which towns
acting through their zoning commissions may adopt regu-
lations that are more restrictive than prohibitory stat-
utes governing the same subject matter. See, e.g., *Mod-
ern Cigarette, Inc.* v. *Orange*, supra, 256 Conn. 119–20.

bylaw, ordinance or regulation require a greater width or size of yards,
courts or other open spaces or a lower height of building or a fewer number
of stories or a greater percentage of lot area to be left unoccupied or impose
other and higher standards than are required by the regulations made under
authority of the provisions of this chapter, the provisions of such statute,
bylaw, ordinance or regulation shall govern."

Lime Rock Park, LLC *v.* Planning & Zoning Commission

To the extent that the plaintiff contends that § 8-13 effectively preempts the common-law preemption doctrine as applied to statutes controlling land use, we disagree. The preemption doctrine embodies commonsense principles that are designed to ensure that the legislative will is not overridden by municipal ordinances and regulations. We can perceive no reason why the legislature would have wanted to force courts that are confronted with prohibitory land use statutes, like § 14-164a (a), to treat them as if they conferred the absolute right to engage in the conduct that is not prohibited, thereby *changing* the intended effect of the statutes.[30] Accordingly, we reject this claim.

Finally, the plaintiff contends that, even if § 14-164a (a), like its predecessor statutes, allows towns to adopt *ordinances* that are more restrictive than § 14-164a (a)

___

[30] In *Mallory* v. *West Hartford*, supra, 138 Conn. 497, this court construed a provision of a special act; see 19 Spec. Acts 939, No. 469, § 20 (1925) (Spec. Act No. 469); that contained language identical to the language of § 8-13 and authorized the town of West Hartford to create zoning districts. See *Mallory* v. *West Hartford*, supra, 499–500. The plaintiff contended that, because a statute setting forth procedures for approving a zone change contained higher standards than those followed by the zoning commission, which complied with certain special laws passed by the legislature, Spec. Act No. 469 rendered the procedures followed by the zoning commission unenforceable. Id. This court concluded that Spec. Act No. 469 was concerned only with statutes governing the "size of yards, number of stories and the like," and did not apply to statutes governing procedures. Id., 500. Thus, the court distinguished between *substantive* statutes and *procedural* statutes, not between statutes governing physical standards and statutes governing other substantive zoning standards, such as § 14-164a (a). We note that this court in *Mallory* did not address the question of whether or how general preemption principles would apply to the plaintiff's claim. We need not decide whether *Mallory* was correctly decided or, if it was, whether the trial court correctly applied it, because, even if the trial court correctly determined that § 8-13 applies only to physical standards, it does not render the 2015 amendments unenforceable. We note, however, that either § 8-13 applies only to statutes governing physical standards under *Mallory*, as the trial court concluded, in which case other substantive zoning statutes would be subject to common-law preemption principles, or § 8-13 applies to all statutes governing land use, which would lead to the same result because § 8-13 incorporates general preemption principles.

with respect to the hours during and days on which racing activities can occur, the town's zoning regulations are not ordinances within the meaning of the proviso clause of the third sentence of the statute.[31] See General Statutes § 14-164a (a) (''provided no such race . . . shall take place contrary to the provisions of any city, borough or town ordinances''). The plaintiff points out that the legislature has always distinguished between regulations and ordinances. See, e.g., General Statutes § 8-13 (''[i]f the regulations made under authority of the provisions of this chapter require a greater width or size of yards, courts or other open spaces or a lower height of building or a fewer number of stories or a greater percentage of lot area to be left unoccupied or impose other and higher standards than are required in any other statute, bylaw, ordinance or regulation, the provisions of the regulations made under the provisions of this chapter shall govern'').[32] In addition, the plaintiff points out that ''ordinance'' is defined by General Statutes § 1-1 (n) as ''an enactment under the provisions of [General Statutes §] 7-157,'' which, in turn, provides that ''[o]rdinances may be enacted by the legislative body of any town . . . .'' General Statutes § 7-157 (a). Because a zoning commission is not the legislative body of a town, the plaintiff contends, it cannot enact ordinances. The plaintiff further relies on this court's decision in *Bora* v. *Zoning Board of Appeals*, 161 Conn. 297, 288 A.2d 89 (1971), in which this court held that, because General Statutes § 30-91 authorized towns, ''by

---

[31] The plaintiff does not indicate whether it raised this claim in the trial court. Because the council and the commission make no claim that the issue is unreviewable, the parties have briefed the issue, and the plaintiff cannot prevail, we review it. *See Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 157–58, 84 A.3d 840 (2014) (''[r]eview of an unpreserved claim may be appropriate . . . when the minimal requirements for review are met and . . . the party who raised the unpreserved claim cannot prevail'' (citation omitted; emphasis omitted; footnote omitted))

[32] Section 8-13 originally was enacted in 1949. See General Statutes (1949 Rev.) § 847.

Lime Rock Park, LLC *v.* Planning & Zoning Commission

[a] vote of a town meeting or by ordinance, [to] reduce the number of hours during which [sales of liquor] shall be permissible," and because a board of zoning appeals did not have the power to enact an ordinance, the board exceeded its powers when it granted a variance reducing the number of hours that a café that served liquor could operate. (Internal quotation marks omitted.) Id., 302; see General Statutes § 30-91 (d).

The council claims that, to the contrary, when a town creates a zoning commission, it delegates the town's legislative authority to control land use to that commission. Accordingly, any regulations adopted by the commission are ordinances, just as they would be if enacted by the town's legislative body. See R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (4th Ed. 2015) § 1:2, p. 5 ("[a]ll of the land use statutes are based upon the police power, which allows regulation of use of property because uncontrolled use would be harmful to the public interest"); id., p. 6 ("[m]unicipal land use regulation must be carried out by ordinance, and the ordinance must be consistent with the enabling statute"). The council and the commission also point out that the words "ordinance" and "regulation" are frequently used interchangeably by the legislature and the courts. See, e.g., General Statutes § 8-2i (a) (referring to "any zoning regulation . . . imposed by ordinance, regulation or pursuant to any special permit, special exception or subdivision plan"); General Statutes § 15-91 (authorizing municipalities to adopt "airport zoning regulations"); General Statutes § 19a-438 (c) (6) (referring to "the zoning ordinances of the municipality"); General Statutes § 21a-62c (c) (referring to "municipal . . . zoning ordinances"); General Statutes § 25-109g (a) (authorizing zoning commission to "revise the zoning ordinances"); General Statutes § 30-44 (referring to "the zoning ordinance of any city or town"); see also, e.g., *NPC Offices, LLC* v. *Kowaleski*, 320 Conn. 519, 531 n.5, 131 A.3d 1144 (2016) (referring to "zoning ordi-

Lime Rock Park, LLC *v.* Planning & Zoning Commission

nances''); *Bauer* v. *Waste Management of Connecticut, Inc.*, supra, 234 Conn. 238 (referring to ''the . . . zoning ordinance''); *Fairlawns Cemetery Assn., Inc.* v. *Zoning Commission*, 138 Conn. 434, 437, 86 A.2d 74 (1952) (observing that ''the zoning commission adopted an ordinance''); *Berlin Batting Cages, Inc.* v. *Planning & Zoning Commission*, 76 Conn. App. 199, 219, 821 A.2d 269 (2003) (''the fact that [the statute at issue] refers to local *ordinances*, while the commission has labeled the enactment at issue . . . a zoning *regulation*, is of no consequence'' (emphasis in original)).

We agree with the council and the commission. Although there may be circumstances under which the distinction between the words ''ordinance'' and ''regulation'' is significant, the words frequently are used interchangeably, and the plaintiff has not explained why the legislature would have wanted to limit the proviso clause of § 14-164a (a) and its predecessor statutes to enactments by the legislative body of a town and to exclude enactments by a zoning commission.[33] Accordingly, we reject this claim.

III

We next address the plaintiff's claim that the trial court incorrectly determined that the word ''weekday,'' as used in the 2015 amendments to the zoning regulations, does not include Saturdays. We agree with the plaintiff.

This claim requires us to interpret article § 221.1 (a) (2) (A) of the 2015 amendments. See footnote 7 of this opinion. ''Because the interpretation of the regulations presents a question of law, our review is plenary. . . . Additionally, zoning regulations are local legislative enactments . . . and, therefore, their interpretation is governed by the same principles that apply to the con-

[33] We further note that the plaintiff itself contends that the 2015 amendments to the zoning regulations constitute a municipal ''ordinance,'' as that word is used § 22a-73. See part IV of this opinion.

Lime Rock Park, LLC *v.* Planning & Zoning Commission

struction of statutes. . . . Moreover, regulations must
be interpreted in accordance with the principle that a
reasonable and rational result was intended . . . . The
process of statutory interpretation involves the determi-
nation of the meaning of the statutory language [or . . .
the relevant zoning regulation] as applied to the facts of
the case, including the question of whether the language
does so apply.'' (Internal quotation marks omitted.)
*Trumbull Falls, LLC* v. *Planning & Zoning Commis-
sion,* 97 Conn. App. 17, 21–22, 902 A.2d 706 (2006).

Section 221.1 (a) (2) (A) provides that ''[a]ctivity with
mufflered racing car engines shall be permitted . . .
[o]n any weekday between [9 a.m.] and [10 p.m.] pro-
vided, however, that such activity may continue beyond
the hour of [10 p.m.] without limitation on not more
than six . . . occasions during any one calendar year.''
The town's zoning regulations do not define ''weekday.''
Although the plaintiff acknowledges that the word *can*
refer to any day of the week except Saturday and Sun-
day, as the trial court found, it points out that a number
of dictionaries define ''weekday'' to include Saturdays.
See American Heritage College Dictionary (2d Ed. 1991)
p. 1371 (defining ''weekday'' as ''1. [a]ny day of the week
except Sunday,'' and ''2. [a]ny day exclusive of the days
of the weekend''); Merriam-Webster's Collegiate Dic-
tionary (11th Ed. 2003) p. 1418 (defining ''weekday'' as
''a day of the week except Sunday or sometimes except
Saturday and Sunday''); see also Webster's New Interna-
tional Dictionary (2d Ed. 1957) p. 2896 (defining ''week-
day'' as ''[a]ny day of the week except Sunday; a working
day''). In addition, the plaintiff points out that a number
of older Connecticut cases use the word ''weekday'' to
refer to any day of the week except Sunday. See *Mason*
v. *Board of Zoning Appeals*, 143 Conn. 634, 635, 124 A.2d
920 (1956) (referring to ''Sundays as well as weekdays'');
*Cadwell* v. *Connecticut Railway & Lighting Co.*, 84
Conn. 450, 456, 80 A. 285 (1911) (referring to ''week days

Lime Rock Park, LLC *v.* Planning & Zoning Commission

and . . . Sundays''); *Frost* v. *Plumb*, 40 Conn. 111, 116 (1873) (referring to "a week day, or . . . the Sabbath''); *Scofield* v. *Eighth School District*, 27 Conn. 498, 499 (1858) (preliminary statement of facts and procedural history) (referring to "week days and . . . Sundays''). Accordingly, the plaintiff contends that "weekday'' is ambiguous.

In support of its contention that, as used in § 221.1 (a) (2) (A) of the 2015 amendments, the word "weekday'' includes Saturdays, the plaintiff relies on the memorandum of decision that the trial court issued in *Vaill I* before rendering judgment, in which the court noted that "residents of Lime Rock often invite visitors and friends to spend the weekend there and to enjoy the peaceful surroundings of the beautiful countryside,'' and that "operation of the [racetrack] on Sundays proves to be especially annoying and irritating to the plaintiffs.'' The court concluded that "the noise does not have the same effect on other days, and the track could be operated on every other day of the week . . . .'' The plaintiff contends that this language shows that, as used in the *Vaill I* memorandum of decision, the word "weekend'' meant Sunday, thereby implying that all other days were weekdays. The plaintiff also points out that both § 221.1 (a) (4) of the 2015 amendments and the stipulation in *Vaill IV* contain provisions prohibiting "the revving or testing of mufflered . . . car engines on Saturdays . . . prior to [9 a.m.] and after [6 p.m.],'' strongly suggesting that the use of such engines was permitted during the remainder of the day.

The commission acknowledges that the 2015 amendments were intended to codify the terms of the 1988 stipulated judgment in *Vaill IV* and concedes that the plaintiff and its predecessor in interest have, pursuant to their understanding of the terms of that judgment, conducted mufflered racing activities on the property on Saturdays for decades, without complaint by the

Lime Rock Park, LLC *v.* Planning & Zoning Commission

*Vaill* plaintiffs or other affected landowners.[34] Accordingly, the commission concedes that, as used in § 221-1 (a) (2) (A) of the 2015 amendments, the word "weekday" includes Saturdays.

The council contends that, to the contrary, under ordinary modern usage, the word "weekday" means any day that does not occur on the "weekend," which means Saturday and Sunday. The council also points out that the 2015 amendments distinguish weekdays from Saturdays in some respects.

We are persuaded by the plaintiff's arguments, as well as the commission's concession, that the word "weekday," as used in § 221.1 (a) (2) (A) of the 2015 amendments, was intended to include Saturdays. The council's reliance on the fact that there are some differences between the restrictions imposed on racing activities from Monday through Friday and those imposed on Saturday racing is misplaced because there is no reason that the commission could not impose distinct regulations on Saturday racing even if Saturday is a weekday. Accordingly, we conclude that the trial court

[34] The council contends that there is no evidence in the record to support the conclusion that the plaintiff and its predecessor in interest have regularly conducted racing activities on Saturdays. As we indicated, however, the parties did not raise this issue in the trial court, presumably because they had simply made assumptions about the meaning of the word "weekday." See footnote 10 of this opinion. Thus, the parties had no reason to believe that they were required to submit evidence on the issue. Inasmuch as the council makes no claim that, if given the opportunity, it could present evidence that mufflered racing has not taken place on Saturdays since the stipulation in *Vaill IV*, we conclude that we may rely on the plaintiff's representation and the commission's concession that such racing has taken place. We also may take judicial notice of the plaintiff's public event calendar for 2020, which indicates that racing activities are scheduled to occur on certain Saturdays. See, e.g., Lime Rock Park, "IMSA Northeast GP" (indicating that sports car race will be held on plaintiff's property on Saturday, July 18, 2020), available at http://www.limerock.com/node/1429 (last visited May 18, 2020). See generally *Moore* v. *Moore*, 173 Conn. 120, 123 n.1, 376 A.2d 1085 (1977) (court may take judicial notice of facts that "are common knowledge and those which are capable of accurate and ready demonstration" (internal quotation marks omitted)).

Lime Rock Park, LLC *v.* Planning & Zoning Commission

incorrectly determined that mufflered racing is prohibited on Saturdays under the 2015 amendments to the zoning regulations.[35]

IV

We next address the plaintiff's claim that the trial court incorrectly determined that § 221.1 (a) (3) of the 2015 amendments restricting unmufflered racing activities is not a noise control ordinance within the meaning of § 22a-73 (b), which, to be effective, would require the approval of the Commissioner of Energy and Environmental Protection (commissioner) pursuant to § 22a-73 (c).[36] The plaintiff contends that § 221.1 (a) (3) is a

[35] As we already indicated, we need not address the plaintiff's claim that the trial court incorrectly, albeit implicitly, determined that the term "week day," as used in § 14-164a (a), does not include Saturdays because, regardless of whether it does, the commission would not be preempted from restricting Saturday racing activities more strictly than the statute or prohibiting them altogether. See footnote 28 of this opinion. We further note that the council has made no claim that, if we conclude that the 2015 amendments allow Saturday racing activities, that portion of the amendments is preempted by § 14-164a (a) because, by failing to include Saturday racing in permitted racing activities, the statute prohibits it. Accordingly, the question of whether § 14-164a (a) preempts the provisions of the 2015 amendments allowing Saturday racing activities is not before us. We are compelled to observe, however, that, as we indicated, Saturday was considered a weekday under ordinary usage at the time that the statute was adopted. We also find it unlikely that the legislature would have imposed a prohibition on Saturday racing by omitting any reference to that day in the statute or that it would have placed greater restrictions on Saturday racing than on Sunday racing.

[36] General Statutes § 22a-73 provides in relevant part: "(a) To carry out and effectuate the purposes and policies of this chapter it is the public policy of the state to encourage municipal participation by means of regulation of activities causing noise pollution within the territorial limits of the various municipalities. To that end, any municipality may develop and establish a comprehensive program of noise regulation. Such program may include a study of the noise problems resulting from uses and activities within its jurisdiction and its development and adoption of a noise control ordinance.

"(b) Any municipality may adopt, amend and enforce a noise control ordinance which may include the following: (1) Noise levels which will not be exceeded in specified zones or other designated areas; (2) designation of a noise control officer and the designation of an existing board or commission, or the establishment of a new board or commission to direct such program; (3) implementation procedures of such program and the relation

Lime Rock Park, LLC *v.* Planning & Zoning Commission

noise control ordinance subject to § 22a-73 (c) because it differentiates the treatment of unmufflered racing activities, which are loud, from mufflered activities, which are less loud. We disagree.

Whether the restrictions on unmufflered racing activities constitute a noise control ordinance for purposes of § 22a-73 is a question of statutory interpretation, over which our review is plenary. See, e.g., *State* v. *Moreno-Hernandez*, supra, 317 Conn. 299. The principles governing our interpretation of statutes are set forth in part II of this opinion. Because none of the parties contends that § 22a-73 is plain and unambiguous as to what constitutes a noise regulation subject to § 22a-73, we may "look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id.

Section 22a-73 is part of the Noise Pollution Control Act (act), General Statutes § 22a-67 et seq. The legislative policy that the act was designed to implement is set forth in § 22a-67.[37] That statute expressly recognizes

of such program to other plans within the jurisdiction of the municipality; (4) procedures for assuring compliance with state and federal noise regulations; (5) noise level restrictions applicable to construction activities, including limitation on on-site hours of operation.

"(c) No ordinance shall be effective until such ordinance has been approved by the commissioner. No ordinance shall be approved unless it is in conformity with any state noise control plan, including ambient noise standards, adopted pursuant to section 22a-69 or any standards or regulations adopted by the administrator of the United States Environmental Protection Agency pursuant to the Noise Control Act of 1972 . . . or any amendment thereto. Notwithstanding the provisions of this subsection, any municipality may adopt more stringent noise standards than those adopted by the commissioner, provided such standards are approved by the commissioner."

[37] General Statutes § 22a-67 provides: "(a) The legislature finds and declares that: (1) Excessive noise is a serious hazard to the health, welfare and quality of life of the citizens of the state of Connecticut; (2) exposure

Lime Rock Park, LLC *v.* Planning & Zoning Commission

that land uses that create excessive noise constitute a potential nuisance and that it is the policy of the state to promote an environment that is "free from noise that jeopardizes the health and welfare of [Connecticut's] citizens . . . ." General Statutes § 22a-67 (b). Pursuant to that policy, the commissioner is authorized to "adopt . . . a comprehensive state-wide program of noise regulation . . . ." General Statutes § 22a-69 (a).

Pursuant to § 22a-73 (a), "it is the public policy of the state to encourage municipal participation by means of regulation of activities causing noise pollution . . . ." To that end, "[a]ny municipality may adopt . . . a noise control ordinance which may include the following: (1) Noise levels which will not be exceeded in specified zones or other designated areas; (2) designation of a noise control officer and the designation of an existing board or commission, or the establishment of a new board or commission to direct such program; (3) implementation procedures of such program and the relation of such program to other plans within the jurisdiction of the municipality; (4) procedures for assuring compliance with state and federal noise regulations; [and] (5) noise level restrictions applicable to construction activities, including limitation on on-site hours of operation." General Statutes § 22a-73 (b).

With these provisions in mind, we preliminarily observe that we see no evidence, and the plaintiff makes no

to certain levels of noise can result in physiological, psychological and economic damage; (3) a substantial body of science and technology exists by which excessive noise may be substantially abated; (4) the primary responsibility for control of noise rests with the state and the political subdivisions thereof; (5) each person has a right to an environment free from noise that may jeopardize his health, safety or welfare.

"(b) The policy of the state is to promote an environment free from noise that jeopardizes the health and welfare of the citizens of the state of Connecticut. To that end, the purpose of this chapter is to establish a means for effective coordination of research and activities in noise control, to authorize the establishment of state noise emission standards and the enforcement of such standards, and to provide information to the public respecting noise pollution."

Lime Rock Park, LLC *v.* Planning & Zoning Commission

claim, that the act was intended to *deprive* municipalities, acting through their zoning commissions, of their undisputed authority to consider noise as a factor when they regulate the uses that may be permitted on specific properties. It is well established that "[t]he central concern of zoning is the interaction of land uses, and an attempt to order those uses to minimize their adverse impacts on each other. The idea is to prevent nuisances before they occur . . . ." T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 35. This court has repeatedly recognized that excessive noise is a type of nuisance that can be regulated pursuant to the zoning authority conferred on municipalities by § 8-2. See *Cambodian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission*, 285 Conn. 381, 440, 941 A.2d 868 (2008) (planning and zoning commission's denial of special exception to build Buddhist temple was supported by substantial evidence when "the commission reasonably could have concluded that a parking lot for 148 cars would be a significant source of noise and disruption in the neighborhood"); *Husti* v. *Zuckerman Property Enterprises, Ltd.*, 199 Conn. 575, 582, 508 A.2d 735 ("[P]erformances at an outdoor amphitheater located in a residential area threatened the quality of life and the safety of the inhabitants of the neighborhood by causing noise, attracting crowds, and creating traffic congestion. These are precisely the kinds of dangers that zoning is meant to combat; see General Statutes § 8-2; and that justify content-neutral regulation of the time, place, and manner of expression." (Footnote omitted.)), appeal dismissed, 479 U.S. 802, 107 S. Ct. 43, 93 L. Ed. 2d 6 (1986). Indeed, the plaintiff concedes that the act does not prevent zoning commissions from considering noise "as a factor in deciding whether a proposed new use [is] appropriate for a particular location" pursuant to the zoning authority conferred by § 8-2.

The plaintiff contends, however, that, once a particular use of a property has been permitted, zoning com-

656 NOVEMBER, 2020 335 Conn. 606

Lime Rock Park, LLC *v.* Planning & Zoning Commission

missions cannot continue to regulate the noise level that is produced by the use without obtaining the approval of the commissioner pursuant to § 22a-73 (c). In support of this claim, the plaintiff relies on *Berlin Batting Cages, Inc.* v. *Planning & Zoning Commission*, supra, 76 Conn. App. 199. In that case, the defendant planning and zoning commission of the town of Berlin appealed from the judgment of the trial court sustaining the plaintiff's appeal from the defendant's denial of an application seeking site plan approval to construct a go-cart track on its property. Id., 200. The defendant claimed, among other things, that the trial court improperly had concluded that § X (D) (3) of the Berlin Zoning Regulations[38] was ineffective because it conflicted with the act. Id., 215–16. The defendant contended that § X (D) (3) was not a noise control ordinance for purposes of the act because it "applie[d] only to site plan review while an ordinance adopted pursuant to [the act] would regulate noise emissions in all situations and not merely when a site plan is under review." (Internal quotation marks omitted.) Id., 218.

The Appellate Court in *Berlin Batting Cages, Inc.*, disagreed. The court concluded that, by adopting the act, "the legislature has undertaken to preempt that field of legislation [i.e., noise pollution control] and to require that local efforts aimed at noise pollution control comply with the requirements [that] it has enumerated by statute." Id., 217. The court further concluded that § 8-2 did not "confer authority [to] the zoning commission to promulgate regulations concerning noise pollution and, moreover, we certainly do not read that language to contradict the [act]." Id., 218. Because the

---

[38] The zoning regulation provided: "Noise—Any noise emitted outside the property from which it originates shall comply with the provisions of Sections 22a-69-1 to 22a-69-7.4 of the Regulations of the Connecticut Department of Environmental Protection (Control of Noise)." (Internal quotation marks omitted.) *Berlin Batting Cages, Inc.* v. *Planning & Zoning Commission*, supra, 76 Conn. App. 215, quoting Berlin Zoning Regs., § X (D) (3).

Lime Rock Park, LLC *v.* Planning & Zoning Commission

defendant had not complied with the requirement of
§ 22a-73 (c) that noise control ordinances be approved
by the commissioner, the Appellate Court concluded
that the zoning regulation was ineffective. Id., 217–19.
Accordingly, the Appellate Court upheld the trial court's
ruling that § X (d) (3) could not provide a basis for
denying the site plan. Id., 219.

The plaintiff in the present case contends that *Berlin
Batting Cages*, *Inc.*, supports its position for two rea-
sons. First, it claims that, although the defendant in
that case would have had the authority under § 8-2 to
consider noise as a factor in deciding whether to allow
the use sought by the plaintiff,[39] the decision establishes
that zoning commissions cannot regulate noise after a
use had been approved without obtaining the approval
of the commissioner. Thus, the plaintiff appears to con-
tend that, once the commission permitted racing activi-
ties on the property in the present case, any further
attempt to regulate the noise level of those activities
would constitute a noise control ordinance for purposes

[39] In this regard, we agree with the plaintiff that, when the Appellate Court
stated in *Berlin Batting Cages*, *Inc.* v. *Planning & Zoning* Commission,
supra, 76 Conn. App. 218, that § 8-2 did not "confer authority in the zoning
commission to promulgate regulations concerning noise pollution," it did
not mean that zoning commissions have no authority under § 8-2 to consider
noise as a factor when determining whether a particular use of the land is
appropriate. Rather, the Appellate Court concluded only that zoning commis-
sions have no authority, other than that conferred by the act, to adopt
regulations like § X (D) (3) of the Berlin zoning regulations, which incorpo-
rated §§ 22a-69-1 through 22a-69-7.4 of the Regulations of Connecticut State
Agencies; see footnote 38 of this opinion; and, therefore, § X (D) (3) consti-
tuted a noise control ordinance subject to the requirements of the act.
Because the state regulations that were incorporated in § X (D) (3) expressly
set forth specific *noise levels* that may not be exceeded in specified *zones*,
we agree with the Appellate Court's assessment. See General Statutes § 22a-
73 (b) (1) (town may adopt noise control ordinances, including "[n]oise
levels which will not be exceeded in specified zones"); see also Regs.,
Conn. State Agencies § 22a-69-2 (designating noise zones); Regs., Conn.
State Agencies § 22a-69-3 (specifying allowable noise levels for designated
noise zones).

Lime Rock Park, LLC *v.* Planning & Zoning Commission

of the act. Second, the plaintiff contends that, under
*Berlin Batting Cages*, *Inc.* v. *Planning & Zoning Com-
mission*, supra, 76 Conn. App. 199, zoning commissions
that want to regulate noise must adopt a ''*comprehen-
sive program* of noise regulation''; (emphasis added;
internal quotation marks omitted) id., 216; and they
cannot adopt noise control ordinances that target spe-
cific properties.

The flaw in the plaintiff's first argument is that, even
if the plaintiff were correct that the commission cannot
regulate the noise level of a land use that it has permit-
ted without obtaining the approval of the commissioner,
the plaintiff incorrectly assumes that the use that the
2015 amendments permit is ''racing activities.'' In fact,
the amendments contemplate *two distinct uses* of the
property—mufflered racing activities and unmufflered
racing activities—with two different noise levels. We
can perceive no reason why, if the commission has the
authority under § 8-2 to consider noise as a factor when
determining whether a particular land use is appro-
priate—which the plaintiff concedes—it would not
have the authority to allow mufflered racing while pro-
hibiting or placing greater restrictions on unmufflered
racing on the basis of their different noise levels. It
would make little sense, for example, to conclude that,
if a zoning commission were to permit racing activities
by noiseless electric vehicles as an appropriate use of
a property under the authority conferred by § 8-2, it
could not thereafter prohibit or restrict unmufflered
monster truck racing on the property without running
afoul of the act, even though the act would not have
affected the commission's authority to prohibit unmuf-
flered racing as a ''new use'' if it had not previously
allowed electric vehicle racing. We conclude, therefore,
that a zoning regulation that differentiates between dis-
tinct *land uses* that produce different noise levels for
purposes of determining whether a specific use is appro-

335 Conn. 606 NOVEMBER, 2020 659

Lime Rock Park, LLC *v.* Planning & Zoning Commission

priate for a property does not, ipso facto, specify ''[*n*]*oise levels* which will not be exceeded in specified zones or other designated areas''; (emphasis added) General Statutes § 22a-73 (b) (1); and, therefore, does not constitute a municipal noise control ordinance for purposes of the act.

This conclusion disposes of the plaintiff's second argument.[40] Even if we were to assume that a town that wishes to establish a noise control program pursuant to the act must adopt a comprehensive program, we have concluded that the 2015 amendments did not constitute a noise control ordinance within the meaning of the act. We conclude, therefore, that the trial court correctly determined that the commission was not required to obtain the commissioner's approval of § 221.1 (a) (3) of the 2015 amendments, pursuant to § 22a-73 (c), before the regulation could be effective.[41]

V

Finally, we address the plaintiff's contention that the trial court incorrectly determined that the commission had the authority under §§ 8-2 and 8-3 (c)[42] to adopt §§ 221.1 (a) (8) and 221.3 (d) of the 2015 amendments (special permit provisions), which provide that the respective subsections of the amendments ''may be amended by the [c]ommission upon filing and approval of . . . a special permit application in compliance with

---

[40] We note that the trial court rejected the plaintiff's broader claim that the 2015 amendments constitute illegal spot zoning, and the plaintiff has not challenged that ruling on appeal.

[41] Accordingly, we need not address the commission's claim that the trial court's ruling may be affirmed on the alternative ground that the restrictions on unmuffled racing set forth in § 211.1 (a) (3) of the 2015 amendments were not based solely on noise impacts, but also on other impacts, such as traffic and property values.

[42] General Statutes § 8-3 (c) provides in relevant part: ''All petitions requesting a change in the regulations or the boundaries of zoning districts shall be submitted in writing and in a form prescribed by the commission and shall be considered at a public hearing within the period of time permitted under section 8-7d. . . .''

Lime Rock Park, LLC *v.* Planning & Zoning Commission

all requirements of these regulations . . . .'' We agree with the plaintiff.

The following additional procedural history is relevant to our consideration of this claim. In support of its determination that the commission had the authority to adopt the special permit provisions, the trial court relied on the Appellate Court's decision in *Taylor* v. *Zoning Board of Appeals*, 65 Conn. App. 687, 783 A.2d 526 (2001). In that case, the plaintiffs operated a nonconforming sand and gravel quarry on their property. Id., 690. The plaintiffs and their predecessors in title had operated the quarry for several decades, but, in 1990, the town of Wallingford amended its zoning regulation to allow quarry operations if the owner obtained a special permit. Id. The plaintiffs obtained a permit and renewed it twice but ultimately let the permit expire. Id. Thereafter, the town's zoning enforcement officer issued a cease and desist order to the plaintiffs. Id., 690–91. The plaintiffs appealed from the order to the zoning board of appeals (board), claiming that, because their quarry operation was a preexisting nonconforming use, they were not required to obtain a special permit. Id., 691. The board denied the appeal on the ground that the plaintiffs had waived their right to continue to use their property as a nonconforming use when they applied for a special permit. Id.

The plaintiffs then appealed to the trial court. Id. The trial court dismissed the appeal on the ground that the town's zoning regulations permitted the conversion of a nonconforming use into a permitted use. Id. The court further concluded that, even if the plaintiffs' use continued to be nonconforming, the town had the authority to regulate the use in the interest of public health, safety and welfare. Id., 691–92.

The plaintiffs appealed from the judgment of dismissal to the Appellate Court, which concluded that

Lime Rock Park, LLC *v.* Planning & Zoning Commission

the trial court had incorrectly determined that the town had the authority to convert the plaintiffs' nonconforming use into a permitted use because, "[o]nce a nonconforming use is established, the only way it can be lost is through abandonment." Id., 695. The Appellate Court also concluded, however, that the town had the authority to regulate the nonconforming use to protect the public health, safety and welfare, "provided it is done reasonably"; (emphasis omitted; internal quotation marks omitted) id., 697; and that the special permit requirement was a reasonable regulation. Id., 698. Accordingly, the Appellate Court affirmed the judgment of the trial court. Id.

In the present case, the trial court found that "the regulation of racing, camping and parking at the track [had] been ambiguous, jumbled, sloppy and confusing prior to the 2015 . . . amendments." In addition, the court found that, "even though [racing activities have] been a specially permitted use since 1975, the [plaintiff] has never applied for or received a special permit." The court concluded that, consistent with *Taylor*, "[i]t would provide a necessary benefit to the public to have a site plan of the [property] on file in the zoning office, detailing important aspects of its operation like sanitation and parking." The trial court further concluded that, under this court's decision in *Zimnoch* v. *Planning & Zoning Commission*, 302 Conn. 535, 29 A.2d 898 (2011), the commission was not precluded by § 8-3 (c) from "combining a zone change application with a special permit application." See id., 552 ("although the considerations and actions taken by the commission in reviewing the zone change application are slightly different in operation when compared to the special exception permit application, we have uncovered no requirement, statutory, regulatory or otherwise, that precludes the town from combining these applications into one process" (footnote omitted)). Accordingly, the trial court

Lime Rock Park, LLC *v.* Planning & Zoning Commission

concluded that, under *Taylor*, the special permit provisions were a reasonable regulation of the plaintiff's nonconforming use.

The plaintiff now contends that, regardless of whether the commission could order the plaintiff to discontinue its racing activities until it obtained a special permit, as was done in *Taylor*,[43] the trial court's reliance on *Zimnoch* v. *Planning & Zoning Commission*, supra, 302 Conn. 535, to support its conclusion that the commission had the authority to require it to apply for a special permit as a condition for seeking an amendment to the zoning regulations was misplaced because that case is distinguishable from the present case. The plaintiff also contends that the special permit provisions are arbitrary and unreasonable because they effectively bar any person except the plaintiff from seeking an amendment. The council and the commission dispute these claims. The commissioner also contends that the plaintiff lacks standing to raise them because the special permit provisions do not bar it from filing a petition to amend the regulations.

"It is, of course, fundamental that no zoning regulations are valid unless they are within the police power. They must bear a reasonable relation to the public welfare and that relation must be within at least one of the

---

[43] The plaintiff strongly suggests that, contrary to the trial court's determination, it could not be required to obtain a special permit in order to continue its present operations on the property because there was no requirement for a special permit when it began the operations. The plaintiff does not address the Appellate Court's decision in *Taylor* v. *Zoning Board of Appeals*, supra, 65 Conn. App. 687, holding that preexisting as of right uses may be subject to a special permit requirement. We need not address the thorny issue of whether *Taylor* was correctly decided and whether the commission could, therefore, order the plaintiff to cease its racing activities until it obtained a special permit, however, because we conclude that, even if the commission could do so under *Taylor*, it could not require the filing of a special permit application as a general condition for filing a petition to amend the regulations.

Lime Rock Park, LLC *v.* Planning & Zoning Commission

particulars specified in the enabling statute. . . . It must be borne in mind that the courts will not substitute their judgment for that of the legislative body if the question whether a zoning ordinance is consistent with the public welfare in any of the particulars specified in the statute is fairly debatable. . . . A zoning ordinance will be held invalid only if it is palpably unjust, unrea sonable or arbitrary.'' (Citations omitted.) *Fairlawns Cemetery Assn., Inc.* v. *Zoning Commission*, supra, 138 Conn. 440; see also *Schwartz* v. *Town Planning & Zoning Commission*, 168 Conn. 285, 294, 362 A.2d 1378 (1975) (zoning regulations were valid when plaintiffs presented no evidence that they were ''unreasonable, arbitrary or confiscatory''). The validity of a zoning regulation is a question of law over which our review is plenary. See, e.g., *Jackson, Inc.* v. *Planning & Zoning Commission*, 118 Conn. App. 202, 206, 982 A.2d 1099 (2009), cert. denied, 294 Conn. 931, 986 A.2d 1056 (2010).

Because it implicates the trial court's subject matter jurisdiction, we first address the commission's claim that the plaintiff lacks standing to challenge the special permit provisions on the ground that they bar other persons from seeking to amend the regulations. In support of this claim, the commission cites *Lauer* v. *Zoning Commission*, 220 Conn. 455, 465, 600 A.2d 310 (1991). In *Lauer*, the defendant, John Angeloni, applied for and obtained a special permit to operate a horse riding academy on his property. Id., 456–58. The plaintiff, who owned land within 100 feet of Angeloni's property; id., 458 n.6; claimed that the failure of the zoning commission to give notice of the special permit proceedings to an adjoining town, as required by General Statutes (Rev. to 1989) § 8-3h, deprived the commission of subject matter jurisdiction over the special permit application. Id., 459. This court concluded that the failure to give notice pursuant to § 8-3h did not implicate the commission's subject matter jurisdiction but merely pro-

Lime Rock Park, LLC *v.* Planning & Zoning Commission

vided for "personal notice." Id., 464–65. This court further concluded that the plaintiff had no standing to raise the claim on appeal that the commission had failed to give personal notice to the adjoining town. Id., 465.

We conclude that *Lauer* is distinguishable from the present case. Unlike the plaintiff in *Lauer*, who was in no way affected by the zoning commission's failure to notify an adjoining town of the special permit proceedings, the plaintiff in the present case is adversely affected by the requirement that it obtain a special permit before it may seek an amendment to the zoning regulations.[44] We conclude, therefore, that the plaintiff has standing to raise the claim that the special permit provisions are arbitrary because they restrict the persons who can seek an amendment to the zoning regulations. A conclusion to the contrary would mean that the plaintiff would be burdened by a facially invalid regulation. In this regard, we note that this court in *Lauer* implicitly recognized that, if § 8-3h had been subject matter jurisdictional, the plaintiff would have had standing to raise the claim that the commission had failed to comply with it. See id.

We now turn to the merits of the plaintiff's claim that the trial court's reliance on *Zimnoch* was misplaced and that the special permit provisions are arbitrary. We agree with the plaintiff. In *Zimnoch*, the defendant, Pond View, LLC (Pond View), owned land in the town of Monroe, part of which fell within a DB-2 business and commercial zone and part of which fell within a residential zone. *Zimnoch* v. *Planning & Zoning Commission*, supra, 302 Conn. 537, 539. Pursuant to town zoning regulations that required a landowner that wanted

_____

[44] As we discuss subsequently in this opinion, we recognize that the plaintiff cannot expand the racing activities on the property without obtaining a special permit. In the absence of the special permit provisions, however, there would be nothing to prevent the plaintiff from seeking an amendment to the zoning regulations to permit expanded activities without actually seeking a special permit to do so. We will not presume that the plaintiff could have no good reason to pursue this course.

Lime Rock Park, LLC *v.* Planning & Zoning Commission

to change the zone in which its land was located to a design district to file simultaneously a petition to establish the design district and an application for a special exception permit, Pond View filed a combined application for a design district zone change and a special exception permit. See id., 539.[45] The application was denied, and a series of appeals followed; id., 540–56; the substance of which has no bearing on the present case. In the course of explaining the applicable regulatory scheme, this court stated in *Zimnoch* that it had "uncovered no requirement, statutory, regulatory or otherwise, that precludes the town [of Monroe] from combining these applications [for a zone change and for a special permit] into one process." Id., 552. Indeed, we noted that "combining zone and permit applications helps expedite the process and ensures that a commission makes the most informed decision possible." Id., 553.

In the present case, the trial court appears to have concluded that *Zimnoch* stands for the general proposition that a petition to amend zoning regulations may

---

[45] The relevant portions of the Monroe zoning regulations that then were in effect are as follows: "Section 117-900 of the Monroe zoning regulations . . . provide[d] in relevant part: 'The owner or owners of a tract of land may petition for the establishment of a design district (D) only, coincidentally with an application for special exception permit and development proposal which shall be proposed and developed in conformance with these regulations. . . . In [d]esign [d]istricts, the existing use of land shall not be changed . . . until a site plan of development shall have been prepared by the owner of such land, and approved by the [c]ommission, and a [s]pecial [e]xception shall have been granted . . . .' " (Emphasis omitted.) *Zimnoch* v. *Planning & Zoning Commission*, supra, 302 Conn. 549 n.11.

"Section 117-905 (A) of the Monroe zoning regulations . . . provide[d] in relevant part: 'An application for a change of zoning classification to a design district shall be submitted in complete form . . . . The [c]ommission shall hold a public hearing on the proposed change of zone and special exception application, as required by the General Statutes.'

"Section 117-907 (A) of the Monroe zoning regulations . . . provide[d] in relevant part: 'A change of zone to a design district shall not become effective until the required special exception shall have been approved by the [c]ommission . . . .' " (Emphasis omitted.) *Zimnoch* v. *Planning & Zoning Commission*, supra, 302 Conn. 549 n.12.

Lime Rock Park, LLC *v.* Planning & Zoning Commission

be conditioned on the simultaneous filing of a special permit application. In *Zimnoch*, however, the regulation that governed petitions to change the zone in which a particular property was located to a design district was specifically directed to the *owners of the property*. See id., 549 n.11 (quoting Monroe Zoning Regs., § 117-900, providing that " '[t]he owner or owners of a tract of land may petition for the establishment of a design district' "). Presumably, this was because only the owners would have standing to seek to designate their property as a design district. Any person who would be affected by the proposed change, however, would be able to protect his or her interests by participating in the public hearings on the petition. See id., 549 n.12 (citing Monroe Zoning Regs., § 117-905 (A)); see also footnote 45 of this opinion. In contrast, in the present case, many persons other than the plaintiff have interests that are affected by the racing activities on the plaintiff's property and the 2015 amendments, whose interests could be protected by filing a petition to amend the regulations. For example, neighboring landowners might want to seek an amendment changing or reducing the number of hours that racing activities are permitted. Under the special permit provisions, they have no ability to do so. The council and the commission—which concede this point—have cited no authority for the proposition that the commission is empowered to arbitrarily restrict the classes of affected persons who can seek to amend particular zoning regulations.[46] We conclude, therefore, that the special permit provisions are invalid.[47]

---

[46] Although the commission concedes that only the plaintiff may seek an amendment to the zoning regulations, it claims that this restriction is not arbitrary because only the plaintiff has standing to do so. The commission does not explain why a neighboring landowner who is adversely affected by racing activities on the property would not have standing to seek an amendment to the zoning regulations to change the activities that are permitted.

[47] It is possible that, under *Zimnoch*, a regulation requiring *the owner of any property* who conducts racing activities that are subject to the 2015 amendments to file a special permit application as a condition for filing a

Lime Rock Park, LLC *v.* Planning & Zoning Commission

We further note that, to the extent that the commission adopted the special permit provisions in order to force the plaintiff to file an application for a special permit before it could expand racing activities on the property, the provisions would appear to be unnecessary. The sole justification for the plaintiff's position that it is not required to apply for a special permit to continue its present activities on the property is that those activities predated the adoption of the regulation requiring a special permit to conduct racing activities in 1975. Thus, the plaintiff contends that, contrary to the holding of the Appellate Court in *Taylor* v. *Zoning Board of Appeals*, supra, 65 Conn. App. 687, conducting the current level of racing activities *without the need to obtain a special permit* is, in effect, a preexisting nonconforming use that the commission cannot abrogate by regulation.[48] The plaintiff makes no claim, however, that it could *expand* its racing activities on the property without first seeking an amendment to the zoning regulations and obtaining the required special permit.[49] Cf. R. Fuller, 9B Connecticut Practice Series: Land Use Law and Practice (4th Ed. 2015) § 52:2, p. 226 ("[t]he zoning regulations . . . may allow [for] expansion of a nonconforming use by special permit" (footnote omitted)).

petition to amend the regulations to expand the permitted use would be valid. The special permit provisions provide, however, that the commission cannot grant *any* petition to amend the zoning regulations unless it first approves a special permit application.

[48] The commission takes no position on this issue.

[49] The plaintiff contended in the regulatory proceedings before the commission that, notwithstanding the series of injunctive orders in the *Vaill* case restricting its use of the property since May 12, 1959, *unlimited* racing and camping activities on the property are a protected nonconforming use because those activities predated the adoption of the town's zoning regulations in 1959. Accordingly, it contended that the proposed amendments codifying the restrictions contained in the *Vaill* orders and the ZBA judgments would be invalid because they would deprive the plaintiff of its vested property rights without compensation. It does not renew that claim on appeal to this court.

## VI

In summary, we conclude that the trial court correctly determined that (1) the plaintiff did not waive its right to challenge the 2015 amendments' prohibition on Sunday racing, and (2) the 2015 amendments' restrictions on unmufflered racing are not subject to the provisions of § 22a-73. We further conclude that the trial court incorrectly determined that (1) § 14-164a (a) preempted the regulation prohibiting racing activities on the plaintiff's property on Sundays, (2) the 2015 amendments prohibit mufflered racing activities on Saturdays, and (3) the commission acted within its authority when it adopted the regulations requiring the plaintiff to obtain a special permit as a condition for filing a petition to amend the 2015 amendments.

The judgment is reversed insofar as the trial court determined that § 14-164a (a) preempted the regulation prohibiting racing activities on Sundays and the case is remanded with direction to render judgment dismissing the plaintiff's appeal with respect to that claim; the judgment is reversed insofar as the trial court ruled that the 2015 amendments prohibited mufflered racing activities on Saturdays and the case is remanded with direction to vacate that ruling; the judgment is reversed insofar as the trial court determined that the commission had the authority to adopt the regulations requiring the plaintiff to obtain a special permit as a condition for filing a petition to amend the 2015 amendments and the case is remanded with direction to render judgment sustaining the plaintiff's appeal with respect to that claim; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.